PUERTO RICO HIGH SCHOOL OF COMMERCE, peticionaria, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; TESORERO DE PUERTO RICO, interventor.

Números 253–254.

*Sometidos:* 1 de abril de 1951.  *Resueltos:* 27 de enero de 1955.

*Rafael Soltero Peralta,* abogado de la peticionaria; *Hon. Secretario de Justicia José Trías Monge (Vicente Géigel Polanco, Ex-Procurador General,* en el alegato) y *Cándido Ceballos, Procurador General Auxiliar,* abogados del interventor, demandado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

La aquí peticionaria, Puerto Rico High School of Commerce, Inc., se organizó bajo tal nombre como corporación del país, de acuerdo con la Ley de Corporaciones Privadas de Puerto Rico, de 9 de marzo de 1911, según enmendada, recibiendo del Secretario de Puerto Rico la certificación correspondiente a su personalidad jurídica el 19 de mayo de 1941. Según la número 4 de sus cláusulas de incorporación, [1] la peticionaria se constituyó "con el objeto fundamental de instaurar y mantener un instituto o escuela superior privada para la enseñanza del comercio, curso secretarial, curso general, idiomas y otras materias propias de una escuela de segunda enseñanza y de escuela superior", instituto o escuela que habría de ser conocida, según dichas cláusulas, como *Puerto Rico High School of Commerce* solamente.

El capital autorizado de la corporación fué de $100,000, dividido en 1,000 acciones con un valor a la par de $100 cada una, comenzando sus negocios con un capital ingresado de $3,000, distribuído entre sus tres incorporadores a razón de diez acciones cada uno.

Respondiendo a los fines de su creación y a su condición de negocio lucrativo, la corporación estableció la escuela de comercio a que se ha hecho referencia, [2] cobrando derechos de

---

[1] Entre las facultades consignadas en dichas cláusulas como medio de llevar a cabo los fines y propósitos de su constitución, la que se numera 6 dispone:

"Llevar a cabo todo cuanto fuera necesario y propio para la realización adecuada de los objetivos trazados para la corporación en este documento y que fueren necesarios e incidentales a la producción o beneficio de la corporación en el curso ordinario de sus negocios, y en general conducir cualquier transacción o negocio legal que sea necesario o incidental a la realización de los objetivos y propósitos de la corporación o que podrían convenientemente llevarse a cabo en conexión con cualesquiera de los negocios de la corporación."

[2] Su carácter de empresa lucrativa ha sido admitido por la peticionaria, según lo hace constar en su alegato al expresar: "La corporación admitió en juicio que no existe como institución caritativa ni para suplir la enseñanza gratuitamente.

"La corporación se dedica a la enseñanza, pero al cobrar por el servicio a los educandos, tiene el carácter de empresa lucrativa."

matrícula a los educandos. (³)    Uno de los tres incorporadores era su director principal, otro, su director académico y profesor, y el tercero su administrador general y subdirector. (⁴) Los bienes que la corporación fué adquiriendo en el curso de sus negocios, consistían, en 1949, de poco más de una cuerda de terreno y de dos edificios en ella construídos—y otro más en construcción—en los cuales tenía instalada la escuela: salones de clase, bibliotecas, equipo escolar, oficinas y otras facilidades propias de una institución educativa.

Los beneficios obtenidos por la corporación se dejaron acumular hasta el 12 de marzo de 1948, (⁵) fecha en la que la Junta de Directores declaró un dividendo a pagarse en efectivo a razón de cien dólares por acción—en total $18,000— y un dividendo en acciones a razón de $19,000 a cada accionista —en total $57,000.

Sosteniendo estar exenta del pago de la contribución sobre la propiedad en virtud de las disposiciones del art. 291, inciso (e), del Código Político, (⁶) la Puerto Rico High School of

---

(³) Dicha escuela está acreditada por el Departamento de Instrucción de Puerto Rico.

(⁴) Durante los años de 1941 a 1949, ambos inclusive, los sueldos pagados a éstos fueron los siguientes:

| Año | Director Principal | Director Académico y Profesor | Administrador General y Sub-director |
|---|---|---|---|
| 1941 | $2, 250 | $1, 500 | $1, 500 |
| 1942 | 2, 600 | 1, 700 | 800 |
| 1943 | 3, 600 | 2, 400 | 1, 600 |
| 1944 | 4, 600 | 2, 800 | 2, 000 |
| 1945 | 5, 600 | 3, 200 | 1, 800 |
| 1946 | 7, 450 | 3, 700 | 2, 700 |
| 1947 | 8, 250 | 5, 250 | 3, 550 |
| 1948 | 8, 250 | 5, 250 | 3, 750 |
| 1949 | 8, 250 | 5, 250 | 3, 750 |

(⁵) Según aparece del *Exhibit* II del demandado.

(⁶) El citado artículo, según enmendado por la Ley núm. 12 de 23 de agosto de 1933—y antes de su enmienda por la Ley núm. 266 de 10 de mayo de 1950—disponía, en lo pertinente:

"Estarán exentas de tributación para la imposición de contribuciones las propiedades siguientes:

(a).    .    .    .    .    .    .    .    .
(b).    .    .    .    .    .    .    .    .
(c).    .    .    ·    .    .    .    .    .
(d).    .    .    .    .    .    .    .    .

Commerce, Inc.—cumplidos los trámites previos de ley—acudió al Tribunal de Contribuciones entonces existente, en querella para el reintegro de la contribución ya pagada, correspondiente a los años de 1942–43 a 1948–49, y en querella separada, impugnando la imposición de la contribución correspondiente al año 1949–50. Dicho tribunal declaró sin lugar tanto la solicitud de reintegro como la impugnación aludida, resolviendo que la exención provista por el citado artículo del Código Político no comprendía la propiedad de la peticionaria, por cuanto ésta dedicaba la misma a la actividad educativa como un negocio lucrativo.

Acudió entonces la peticionaria a este Tribunal, en solicitudes separadas de *certiorari*, sosteniendo, al igual que lo hizo ante el tribunal a quo, la procedencia de la exención contributiva por ella reclamada, bajo las disposiciones de ley ya citadas. Por ser idéntico el fundamento de ambos recursos, habremos de tratarlos de ahora en adelante como uno solo.

▆▆▆▆ La contención de la peticionaria es que procede la exención contributiva de la propiedad en la que desarrolla sus negocios corporativos, por ser dicha propiedad utilizada como *centro de educación*, cayendo, por lo tanto, dentro del siguiente

(*e*) Todo edificio utilizado y destinado exclusivamente para el culto religioso, así como casas parroquiales dedicadas exclusivamente a habitación de y en donde constantemente vivan párrocos, ministros o sacerdotes en general que oficien en las parroquias e iglesias correspondientes, siempre y cuando dichas casas parroquiales sean propiedad de la orden o institución respectiva, estén situados en la misma municipalidad a la cual pertenece la iglesia, incluyendo asientos y muebles dentro de los mismos; todo edificio destinado a logia masónica u odfélica o centro de estudios teosóficos o psicológicos, o utilizado para centro de educación, literario, científico, o caritativo, con los muebles, enseres y aparatos pertenecientes al mismo; todo edificio, incluyendo el equipo y mobiliario dentro del mismo, que sea propiedad absoluta de una asociación que no tenga por objeto un beneficio pecuniario, y que sea utilizado y destinado exclusiva y totalmente, para organizaciones del trabajo, centro de recreo, esparcimiento y cultura y trato social y que mantenga permanentemente un gabinete de lectura de periódicos, magazines y folletos, y de prensa ilustrada en general, así nacional como extranjera; y toda superficie de terreno, cuya extensión no exceda de cinco cuerdas, en el cual dicho edificio o edificios esté o estén construídos; siempre que tales terrenos y edificios no sean arrendados ni utilizados de otra manera con el fin de que produzcan un beneficio pecuniario, ya al arrendador, ya al arrendatario."

grupo exento por ley: "todo edificio destinado a logia masónica u odfélica o centro de estudios teosóficos o psicológicos o *utilizado para centro de educación,* literario, científico, o caritativo, con los muebles, enseres y aparatos pertenecientes al mismo." Su criterio, contrario al del interventor, es el de que la exención se aplica tanto a la propiedad de instituciones educativas que funcionan con fines de lucro o para beneficio de sus dueños, como a las establecidas sin tales fines, ya que el estatuto no limita expresamente dicha exención a estas últimas. Veamos.

Siendo la cuestión en controversia el alcance que en el aspecto indicado tenga la exención provista por la Legislatura en el inciso (*e*) del art. 291 del Código Político, el problema es uno de interpretación estatutaria. La exención aquí reclamada debe denegarse si no se expresa en el estatuto, o no surge de éste por necesaria implicación, la intención legislativa de que dicha exención se extienda a los edificios utilizados como centros de educación si esa actividad se lleva a cabo como negocio lucrativo—cuyo fin primordial es el de obtener beneficios pecuniarios, y la educación el medio para obtener éstos—ya que las exenciones contributivas deben interpretarse restrictivamente en contra del contribuyente. *Asociación de Maestros* v. *Sancho Bonet, Tes.,* 54 D.P.R. 536, 540; *Monllor & Boscio, Sucrs.* v. *Sancho Bonet, Tes.,* 61 D.P.R. 67, 73; *Puerto Rico Ilustrado, Inc.* v. *Buscaglia, Tes.,* 64 D.P.R. 914, 918; *National Hats Co.* v. *Sancho,* 65 D.P.R. 241, 244; *Buscaglia, Tes.* v. *Tribunal de Contribuciones, Sindicatura Rubert Hnos., Int.,* 68 D.P.R. 37, 39; *Wood* v. *Tribunal de Contribuciones y Tes., Int.,* 71 D.P.R. 233, 235; *Tesorero* v. *Tribunal de Contribuciones y Cervecería India,* 71 D.P.R. 512, 516; *Sucn. Serrallés* v. *Tribunal de Contribuciones,* 73 D.P.R. 35, 38; *Descartes, Tes.* v. *Tribunal de Contribuciones y Ortiz,* 73 D.P.R. 491, 497.

▇▇▇▇ Un examen del estatuto nos lleva a la conclusión de que si bien el legislador, al clasificar en tres grupos los bienes a los cuales concedió la exención, no requirió expresamente que

las actividades en que se utilizaran los centros de *educación* —incluídos en el segundo de dichos grupos—se desarrollaran sin fines de lucro o beneficio pecuniario cuando fueren propiedad de quien los utiliza, tal requisito no es necesario, pues en ese sentido debe entenderse el propósito legislativo, habida cuenta de la naturaleza, intrínsicamente no lucrativa, de las demás actividades en dicho grupo incluídas, determinantes de la exención, las cuales, en el concepto general, no persiguen beneficios de tal índole, propendiendo tan sólo al bien de la comunidad a través de servicios de beneficio cultural, intelectual, moral y espiritual. La aplicación de la regla de interpretación estatutaria *noscitur a sociis* nos lleva a concluir que estando incluída la actividad educacional, al concederse la exención, juntamente con otras de carácter no lucrativo, la naturaleza de aquélla está determinada por la condición no pecuniaria de éstas. *Behnke-Walker Business College* v. *Multnomah County*, 146 P.2d 614, 616; *Lawrence Business College* v. *Bussing*, 231 Pac. 1039. *Contra: Pitcher* v. *Wolcott School Association*, 165 Pac. 608.

La Asamblea Legislativa tiene amplio poder para conceder exenciones contributivas, pero el ejercicio de ese poder presupone la consecución de algún objetivo de interés público que justifique al Estado a otorgar la concesión. Generalmente, exenciones como las provistas por el art. 291 (*e*) del Código Político, se conceden en consideración a servicios o actividades de naturaleza esencialmente públicas, que no lleven en sí ánimo de lucro, y que rindan provecho a la comunidad en general. Véanse *Dwight School* v. *State Board of Tax Appeals*, 177 Atl. 875, 878; *Tesorero* v. *Tribunal de Contribuciones y Auxilio Mutuo, Int.*, 66 D.P.R. 659. Ello es así porque cuando se concede una exención contributiva se está relevando a un contribuyente de la responsabilidad de sostener, con la parte que de otro modo le correspondería, las cargas del Estado, y se está trasladando esa responsabilidad al resto de los contribuyentes. Es por esto que en toda exención contributiva está implícito el factor de beneficio general

a la comunidad, dentro de las normas de política pública que el Estado ha trazado. (⁷)

El tribunal recurrido no cometió el error que se señala por la peticionaria, llegando a la correcta conclusión de que sus bienes no estaban exentos del pago de la contribución sobre la propiedad.

*Las sentencias del Tribunal de Contribuciones serán confirmadas.*

(⁷) Nuestra Asamblea Legislativa, por leyes especiales, ha declarado exenta de contribución la propiedad de diversas instituciones educativas que, al igual que la peticionaria, operan con fines pecuniarios. Al así hacerlo tuvo presente, sin embargo, "la provechosa labor que realizan en bien de la juventud, ofreciendo educación gratuita a un gran número de estudiantes pobres." Véanse a ese efecto las Leyes núm. 192 de 13 de mayo de 1938 (pág. 393), núm. 109 de 30 de abril de 1940 (pág. 677), y núm. 350 de 17 de abril de 1946 ((1) pág. 945).