CLUB YAUCANO, demandante y apelante, *v.* SOL LUIS DESCARTES, SECRETARIO DE HACIENDA, demandado y apelado.

Número: 11788. Resuelto: 29 de septiembre de 1961.

*Gutiérrez, Sánchez & Morales,* abogados del apelante; *José Trías Monje, Secretario de Justicia* y *Cándido Ceballos, Procurador Auxiliar,* abogados de la parte apelada.

Sala integrada por el Juez Asociado Señor Hernández Matos, como Presidente de Sala, y los Jueces Asociados Señores Blanco Lugo y Dávila.

El Juez Asociado Señor Blanco Lugo emitió la opinión del Tribunal.

El Club Yaucano, entidad que figura inscrita desde el 20 de mayo de 1946 en la Secretaría de Estado como una asociación sin fines pecuniarios, recurrió al Tribunal Superior para impugnar la imposición de contribución territorial sobre una parcela de terreno de 1.74 cuerdas y sus edificaciones, que para los ejercicios fiscales 1952-53, 1953-54 y 1954-55 le notificó el Secretario de Hacienda. Alegó que dicha imposición es contraria a la ley por tener derecho a la exención que concede el artículo 291 (e) del Código Político (13 L.P.R.A. sec. 551).

Trabada la contienda, al iniciarse la vista del caso, se informó al tribunal de instancia que la única controversia a dilucidarse se refería a la alegación del Secretario—levantada en la contestación al párrafo cuarto de la demanda— de que la entidad demandante no tenía derecho a la exención reclamada porque dedica parcialmente sus propiedades a fines pecuniarios, "cediendo [sus] bienes y facilidades recreativas a personas particulares, por conducto de sus socios, para ciertas actividades, mediante el pago de determinadas sumas de dinero".(1)

El artículo 291 del Código Político de Puerto Rico (13 L.P.R.A. sec. 551) que relaciona las propiedades exentas de tributación para la imposición de la contribución territorial, dispone en su inciso (e) (2) que:

---

(1) El abogado de la asociación demandante informó al tribunal que la controversia se reducía a determinar si los salones de la institución "se ceden a personas particulares, mediante el cobro de una suma", y el representante del Secretario de Hacienda asintió a ello. Inmediatamente tuvo lugar el siguiente diálogo (T. E., pág. 5):

"Hon. Juez:

Entonces, ¿a no ser por eso habría derecho a la exención?

¿Los demás requisitos se cumplen?

Demandado:

Lcdo. Ceballos:

Los demás requisitos se cumplen."

Sobre el efecto de esta admisión en relación con los *hechos* envueltos en el caso, véanse, *Coll* v. *Picó*, 82 D.P.R. 27, 36 (1960); *Cooperativa Cafeteros de Puerto Rico* v. *Gobierno de la Capital*, 82 D.P.R. 51 (1961); *Freeman* v. *Noguera*, 82 D.P.R. 307 (1961).

(2) Esta disposición estaba redactada originalmente en la siguiente forma (sec. 2943 de los Estatutos Revisados de 1911):

"(e) Todo edificio utilizado y destinado exclusivamente para el culto religioso, incluyendo escaños, asientos y muebles dentro del mismo; todo edificio utilizado para centro de educación, literario, científico o caritativo, con los muebles, enseres y aparatos pertenecientes al mismo; y toda superficie de terreno, cuya extensión no exceda de cinco cuerdas, en el cual dicho edificio o edificios esté o estén construidos; siempre que tales terrenos y edificios no sean arrendados o utilizados de otra manera con el fin de que produzcan un beneficio pecuniario, ya al arrendador, ya al arrendatario."

Hasta el presente, ha sufrido las siguientes modificaciones: a) por la Ley Núm. 76 de 14 de marzo de 1912 (Leyes, pág. 124) se extendió la exención a las logias masónicas; b) mediante la Ley Núm. 42 de 7 de

"(e) Todo edificio, incluyendo el equipo y mobiliario dentro del mismo, utilizado y destinado exclusivamente para el culto religioso, así como para casas parroquiales dedicadas exclusivamente a habitación de y en donde constantemente vivan párrocos, ministros o sacerdotes; todo edificio, incluyendo el equipo y mobiliario dentro del mismo, destinado a logia masónica u odfélica o centro de estudios teosóficos o psicológicos o utilizado para centro de educación literaria y científica, o a centro caritativo; todo edificio, incluyendo el equipo y mobiliario dentro del mismo, que sea utilizado y destinado exclusivamente, para organizaciones del trabajo, *centro de recreo,* esparcimiento y cultura y trato social y que mantenga permanentemente un gabinete de lectura de periódicos, magazines y folletos, y de prensa ilustrada en general, así nacional como extranjera; y toda superficie de terreno, cuya extensión no exceda de cinco cuerdas, en el cual dicho edificio o edificios esté o estén construidos; siempre que tales terrenos y edificios sean propiedad absoluta de la organización o institución que solicita la exención y no sean arrendados ni utilizados, parcial o totalmente, con el fin de que produzcan un beneficio pecuniario, ya al arrendador, ya al arrendatario; y siempre que dicha institución no tenga por objeto un beneficio pecuniario; *Disponiéndose,* que en los

julio de 1925 (Leyes, pág. 257) se concedió la exención a las asociaciones que no tengan por objeto un beneficio pecuniario, en las siguientes palabras: "todo edificio, incluyendo el equipo y mobiliario dentro del mismo, que sea propiedad absoluta de una asociación que no tenga por objeto un beneficio pecuniario, y que sea utilizado y destinado, exclusiva y totalmente, para organizaciones del trabajo, centro de recreo, esparcimiento y cultura y trato social y que mantenga permanentemente un gabinete de lectura de periódicos, magazines y folletos, y de prensa ilustrada, en general, así nacional como extranjera"; c) la Ley Núm. 4 de 11 de abril de 1928 (Leyes, pág. 121) extendió la exención a edificios destinados a logias odfélicas o centro de estudios teosóficos o psicológicos; d) las casas parroquiales dedicadas exclusivamente a habitación de y en donde vivan párrocos, ministros o sacerdotes en general que oficien en las parroquias o iglesias correspondientes, siempre que dichas casas parroquiales sean propiedad de la orden o institución respectiva, estén situadas en la misma municipalidad a la cual pertenece la iglesia, fueron declaradas elegibles para la exención por la Ley Núm. 12 de 23 de agosto de 1933 (Leyes, pág. 73); y, e) finalmente por la Ley Núm. 266 de 10 de mayo de 1950 (Leyes, pág. 693) se dispuso que en los casos de instituciones que se dediquen a la enseñanza no regiría la limitación de cinco cuerdas, siempre que no excediera de cien cuerdas, y los terrenos se utilizaren en la enseñanza, y se eliminó el requisito de que las casas parroquiales pertenecieran a la institución u orden respectiva. Véase, *Board of National Missions* v. *Robles,* 58 D.P.R. 222 (1941).

casos de instituciones que se dediquen a la enseñanza no regirá la limitación de cinco (5) cuerdas anteriormente consignada, y la exención de contribuciones sobre el terreno se extenderá hasta un máximum de cien (100) cuerdas siempre que tales terrenos sean utilizados en relación a la enseñanza." (Bastardillas nuestras.)

■ De conformidad con el precepto transcrito es necesario la concurrencia de cuatro requisitos para que pueda reclamarse con éxito la exención allí consagrada, a saber: a) que el edificio en cuestión sea propiedad absoluta de una asociación que no tenga por objeto un beneficio pecuniario; b) que dicho edificio sea utilizado y destinado exclusiva y totalmente para, entre otras cosas, centro de recreo, esparcimiento y cultura y trato social; c) que se mantenga permanentemente un gabinete de lectura de periódicos, magazines y folletos, y de prensa ilustrada en general, así nacional como extranjera; y, d) que el edificio y terrenos en donde enclava no sean arrendados y utilizados para producir un beneficio pecuniario al arrendador o al arrendatario.

En *Puerto Rico High School of Commerce* v. *Tribl. Contribuciones*, 77 D.P.R. 875 (1955) sostuvimos que la exención provista en el artículo 291(e) del Código Político (13 L.P.R.A. sec. 551) no se extiende a la propiedad de una corporación que se dedica a actividades educacionales privadas como un negocio lucrativo, ya que estas exenciones se conceden generalmente en consideración a servicios o actividades de naturaleza esencialmente públicas, sin ánimo de lucro particular y que, en alguna forma, rindan provecho a la comunidad en general. Se trataba en dicho caso de una corporación organizada bajo la Ley de Corporaciones Privadas, con fines lucrativos, y la prueba estableció que sus tres incorporadores no sólo derivaban sueldos por los servicios que prestaban a ésta, sino que recibían dividendos provenientes de los beneficios logrados en las actividades educativas desarrolladas.

En *Cámara de Comercio* v. *Tribunal de Contribuciones,* 67 D.P.R. 427 (1947) indicamos que para que una entidad pudiera acogerse a los beneficios de la exención contributiva provista en el artículo 291(e) del Código Político era necesario que el edificio perteneciente a ésta se destinara *exclusiva* y *totalmente* para los fines allí determinados. Resultando de la prueba que la demandante tenía arrendada la planta baja de su edificio a tres entidades particulares, por lo cual recibía determinada cantidad mensual por concepto de cánones, era evidente que no calificaba para obtener la exención, no sólo por no utilizar el edificio única y exclusivamente **para** sus propios fines, sino por la posibilidad de que derivase un beneficio pecuniario. El hecho de que cualquier beneficio percibido se utilizare para amortizar un gravamen hipotecario que pesaba sobre la edificación en nada alteraba la conclusión expuesta.

En *Buscaglia* v. *Tribunal de Contribuciones,* 66 D.P.R. 659 (1946), apelación desestimada en 164 F.2d 745 (1947) y certiorari denegado en 333 U.S. 867 (1948), afirmamos que a los fines de disfrutar de la exención contributiva a que nos hemos venido refiriendo no basta con que los bienes sean propiedad de una entidad organizada sin fines de lucro (Sociedad Española de Beneficencia y Auxilio Mutuo), sino que es necesario que efectivamente se usen para fines caritativos. Indicamos además que esta determinación es asunto en última instancia a resolverse en cada caso de acuerdo con las circunstancias particulares que lo rodean.

Una regla de hermenéutica frecuentemente invocada expresa que las exenciones contributivas deben ser interpretadas restrictivamente, *Puerto Rico High School of Commerce* v. *Tribl. Contribuciones,* 77 D.P.R. 875 (1955); *Fajardo Sugar Co.* v. *Secretario de Hacienda,* 76 D.P.R. 856 (1954); *Francis* v. *Tribl. Contribuciones y Tes.,* 74 D.P.R. 19 (1952); *In re Hillcrest Memorial Gardens, Inc.,* 119 S.E.2d 753 (W.Va. 1961); *Community Drama Ass'n of Des Moines* v. *Iowa State*

*Tax Commission*, 109 N.W.2d 23 (Iowa 1961) ; *Oregon Methodist Homes, Inc.* v. *Horn*, 360 P.2d 293 (Ore. 1961) ; y que quien reclama el beneficio de la exención debe establecer cumplidamente su derecho a la misma, *Bouchard* v. *Johnson*, 170 A.2d 372 (Me. 1961) ; *General Tel. Co. of Southeast* v. *Boyd*, 343 S.W.2d 872 (Tenn. 1960) ; *In re Taxes of Johnson*, 356 P.2d 1028 (Haw. 1960). Sin embargo, esto no significa que la ley tenga que ser interpretada con un celo de necesaria exclusión de los beneficios que concede la exención, sino meramente que no debe extenderse más allá del propósito legislativo discernible, *Deubel* v. *Kervick*, 166 A.2d 561 (N.J. 1960), o sea, que la interpretación no puede ser tan estrecha y literal que derrote el propósito mismo del estatuto, *Buscaglia, Tes.* v. *Tribunal de Contribuciones*, 67 D.P.R. 57 (1947) ; *People ex rel Watchtower Bible and Tract Society Inc.* v. *Haring*, 170 N.E.2d 677 (N.Y. 1960) ; *Westminster Memorial Park* v. *County of Orange*, 354 P.2d 247 (Cal. 1960) ; *Armco Steel Corporation* v. *State Tax Commission*, 155 A.2d 678 (Md. 1959). Todo cuanto se requiere es que la interpretación sea razonable *Holy Trinity Protestant Episcopal Church of Kenwood* v. *Bowers*, 173 N.E.2d 682 (Ohio 1961).

▮▮▮ Es preciso observar que la exención a que se refiere el inciso (e) transcrito se concede a la propiedad, y no a la organización que es dueña de la misma. Como acertadamente expresa el tribunal recurrido, la naturaleza de la exención es *in rem* y no *in personam*. Los requisitos que impone el estatuto se refieren *todos* a la propiedad, a saber: a) el título de dominio sobre la misma debe pertenecer a una asociación que no tenga por objeto un beneficio pecuniario; b) debe ser utilizada *exclusivamente* como centro de recreo y para el esparcimiento de y trato social entre los socios; c) debe mantenerse en la misma un gabinete de lectura bajo ciertas condiciones; y, d) no puede ser arrendada o utilizada para producir un beneficio pecuniario al arrendador o al arrendatario. Para ello debe considerarse el uso principal o domi-

nante de la propiedad, y no un uso incidental, *Spring Hill Cemetery of Danville* v. *Ryan*, 170 N.E.2d 619 (Ill. 1960); *Iota Benefit Association* v. *County of Douglas*, 85 N.W.2d 726 (Neb. 1957); *Columbus Youth League* v. *County Board of Revision*, 174 N.E.2d 110 (Ohio 1961). Otro factor determinante es la forma en que opera sus actividades, pero no la forma en que está distribuido el capital social de la asociación propietaria de la misma, *Pacific Supply Co-op* v. *Ellis*, 356 P.2d 939 (Or. 1960). También se ha resuelto que lo que debe considerarse es el uso que se dé a la propiedad, pero no el uso de los fondos derivados de la operación de la misma. *Columbus Youth League* v. *County Board of Revision*, 174 N.E.2d 110 (Ohio 1961); *Burns* v. *Glander*, 64 N.E. 2d 678 (Ohio 1946).

El tribunal recurrido concluyó que la apelante no podía reclamar exención para su edificio porque, aunque se organizó como una asociación sin fines pecuniarios, "la forma en que se estructuró a sí misma y estableció su funcionamiento, permite y da lugar a que la propiedad sobre la cual se pide exención sea usada, o resulte ser usada, para beneficio personal [de algunos de sus miembros]". Para llegar a esta determinación hizo un cuidadoso estudio del reglamento y las cláusulas de incorporación del Club Yaucano, especialmente las relacionadas con una posible liquidación de la asociación. El juez de instancia dio gran importancia a las disposiciones reglamentarias de los artículos 15(e) ([3]) y 56(b) ([4]). A nuestro juicio, gran parte de la significación

---

([3]) Dicho artículo 15(e) lee como sigue:

"Los socios fundadores son los únicos dueños de toda la propiedad mueble e inmueble y de todos los créditos y valores de cualquier clase que posea el club en la actualidad o que pueda adquirir en el curso de su existencia."

([4]) Dicho artículo 56(b) lee como sigue:

"En caso de disolución del Club Yaucano, según lo provee el artículo 2 de este Reglamento, se procederá a la liquidación de toda la propiedad mueble e inmueble y de los demás valores que posea el Club. Una vez satisfechas las obligaciones pendientes, se repartirá el remanente única-

que se le atribuye a estas disposiciones se disipa cuando se considera que para poder ser socio fundador sólo se requiere el pago de una cantidad prefijada, que no guarda relación con el valor real de los bienes de la asociación al momento de hacerse socio, y que no existe limitación alguna en cuanto al tiempo para hacer la solicitud. Además, el hecho incontrovertido es que ningún socio fundador o de otra clase se ha beneficiado personalmente con motivo de las actividades del club. Sin embargo, no creemos que a los fines de resolver sobre el derecho a la exención sea necesario proyectar los hechos hacia el futuro y derivar las posibles consecuencias en una liquidación, sino que es preciso considerar si la situación a la fecha en que se impuso la contribución sostiene que el edificio se utilizaba para fines exclusivos de la asociación y si este uso redundaba en beneficio económico para la asociación o de alguno de sus miembros en particular. Cfr. *Mary Immaculate School* v. *Assessors*, 175 N.Y.S. 701 (1919). La prueba, a nuestro juicio, requiere que ambas proposiciones se contesten en la negativa. Los testimonios de los señores Julio C. Torres y Francisco Lluch establecieron que el edificio no ha sido arrendado ni utilizado por personas particulares, y "que no haya sido para el uso de socios"; que los salones y facilidades recreativas no se ceden a personas que no sean socios; y que es condición indispensable ser socio para poder utilizar el edificio; que cuando las actividades se ceden a un socio éste puede traer invitados, pero es responsable no sólo de los gastos en que se incurra con motivo de la celebración de la actividad específica, sino de la conducta

mente entre los socios fundadores y en proporción al número y valor de certificados que posea cada cual. DISPONIÉNDOSE que, antes de entregar la participación de cualquier socio se le descontará de ella la suma que adeude por cuotas y cuentas atrasadas, según lo dispone el inciso (f) del artículo 24 de este Reglamento."

de los concurrentes; (⁵) que cuando se permiten tales actividades particulares de un socio, los otros asociados no pueden ser excluidos del uso del club; que la operación de la cantina y la cocina ocasiona un déficit aun cuando se cobran precios con miras a cubrir todos los gastos y que este déficit se enjuga con las cuotas que pagan los socios. (⁶)

Por otro lado, tratándose de una exención *in rem*, no es decisiva la forma en que se estructuró la entidad demandante, ya que la exención no se concede en consideración a la asociación, sino que lo más importante es determinar el uso predominante que dicha asociación le ha dado a la propiedad; o sea, que el factor más relevante es si se ha utilizado exclu-

---

(⁵) El reglamento interno del Club Yaucano dispone:

"Artículo 21.—Todos los socios y sus familiares tendrán derecho a visitar el club y hacer uso de sus facilidades; pero, para asistir a los actos que celebre el club, será necesario proveerse de una invitación especial, con carácter personal e intransferible, que deberá presentarse a la entrada. Se entenderá como familiares de los socios: la esposa, las hijas solteras, los hijos varones menores de 18 años, y demás parientes del sexo femenino que vivan bajo el mismo techo.

"Artículo 22.—Mediante solicitud por escrito, los socios podrán obtener, del presidente o de la Junta Directiva, invitaciones adicionales para familiares y amigos no residentes en la zona metropolitana que deseen concurrir a los actos sociales que celebre el club. Pero la concesión o no de tales invitaciones será a discreción del Presidente o de la Junta Directiva, autoridades éstas que quedan facultadas para establecer un cargo mínimo en estos casos especiales. DISPONIÉNDOSE que ningún socio podrá solicitar invitaciones adicionales para un número mayor de tres personas ni por más de dos veces en un año para la misma persona. DISPONIÉNDOSE, además, que el socio favorecido por estas invitaciones adicionales será responsable de la conducta observada por sus invitados.

"Artículo 23.—Cualquier socio, bajo su responsabilidad, podrá llevar al club a amigos visitantes que sean acreedores a ello; pero dichas visitas no podrán efectuarse durante la celebración de actos sociales a menos que se hayan provisto de las invitaciones especiales requeridas en el Artículo 22."

(⁶) En cuanto a este particular no es correcto afirmar que esta operación produce beneficios. Los estados financieros presentados en evidencia reflejan solamente el beneficio bruto de tales operaciones calculado mediante la deducción del costo de las bebidas, etc., del importe total de los ingresos, pero no toma en consideración otros gastos generales, como salarios a empleados, parte proporcional de los gastos administrativos y otros gastos fijos.

sivamente como centro de recreo y para el esparcimiento, la cultura y trato social de sus miembros. Así lo entendió el propio Secretario de Hacienda, al indicar que la controversia de hecho se limitaba a determinar si los salones y facilidades del edificio del Club Yaucano se cedían a personas particulares, mediante pago; y como hemos visto, la única prueba que se aportó no sostiene la contención del Secretario de Hacienda.

■ Es necesario aclarar que el hecho de que una asociación se organice sin propósitos lucrativos no significa que necesariamente no pueda tener ingresos, siempre que éstos no provengan de actividades llevadas a cabo como una empresa comercial, sino meramente para la conveniencia de sus miembros e invitados.

El presente caso es distinguible a los tres anteriores en que hemos tenido ocasión de interpretar el inciso (e) del artículo 291 mencionado. No se trata, como en *Puerto Rico High School of Commerce* de una entidad que se dedique a actividades lucrativas; ni tiene arrendado parcial o totalmente el edificio en relación con el cual se reclama la exención, como en *Cámara de Comercio;* y sus propiedades se destinan efectivamente para el esparcimiento y trato social de los asociados, en distinción a lo que sucedía en el caso de *Auxilio Mutuo.*

■ La Asamblea Legislativa ha evidenciado una inequívoca intención de conceder el beneficio de exenciones contributivas a asociaciones de esta índole: contribución sobre herencia y donaciones, sección 4 de la Ley Núm. 303 de 12 de abril de 1946 (Leyes, pág. 783, 13 L.P.R.A. sec. 886 (c) (2) y (3) ) (⁷)

---

(⁷) *"Exenciones*
  "(a)  . . . . .
  "(b)  . . . . .
  "(c)  . . . . .
  "(1)  . . . . .
  "(2)  Una corporación, asociación, o fideicomiso, o caja, fondo comunal, o fundación organizada y que opere con fines exclusivamente religiosos, caritativos, científicos, literarios, docentes, culturales, sociales o de bienestar

contribución sobre ingresos, sección 101 de la Ley núm. 91 de 29 de junio de 1954 (Leyes, pág. 475, 13 L.P.R.A. sec. 3101(9));(⁸) contribución sobre espectáculos públicos, art. 1 de la Ley núm. 68 de 11 de junio de 1953, según enmendada por la Ley núm. 14 de 13 de abril de 1954 (Leyes, pág. 135, 13 L.P.R.A. sec. 2142).(⁹) Generalmente el propósito de estas exenciones es facilitar la labor que se realiza por estas instituciones, "por entender que con ello se realiza un fin público". Cfr. *Snyder* v. *Town of Newton*, 161 A.2d 770 (Conn. 1960). En la actualidad se reconoce que el recreo del ciudadano es, cuando menos, parcialmente función del Estado. (Véase, Ley núm. 114 de 23 de junio de 1961, 15 L.P.R.A. sec. 501, Supl. 1961.) En este sentido el Club Yau-

público, incluyendo el fomento de las artes y la prevención de la crueldad con los niños o los animales; *sin que parte alguna de su ganancia neta redunde en beneficio de cualquier accionista o individuo particular,* y sin que parte sustancial de sus actividades consista en hacer propaganda encaminada a obtener la aprobación de determinada legislación, o de otro modo tratar de influir en la obtención de la misma; *Disponiéndose,* que los partidos políticos organizados de acuerdo con la Ley Electoral de Puerto Rico, subtítulo 1 del Título 16, no estarán comprendidos dentro de las asociaciones a que se refieren las disposiciones de esta sección;

"(3) Una sociedad, orden, o asociación fraternal, que opera bajo el sistema de logias, siempre y cuando que dichas donaciones sean para ser usadas exclusivamente con fines religiosos, caritativos, científicos, literarios, o docentes, incluyendo el fomento de las artes y la prevención de la crueldad con los niños o los animales." (Bastardillas nuestras)

(⁸) *"Exenciones de contribución sobre corporaciones*

"Las siguientes organizaciones estarán exentas de tributación bajo este subtítulo—

". . . . .

"(9) Clubs organizados y administrados exclusivamente con fines de placer, recreo y otros propósitos no lucrativos, ninguna parte de cuyas utilidades netas redunde en beneficio de algún accionista o individuo particular."

(⁹) *"Asociaciones con fines no pecuniarios exentas de la contribución sobre espectáculos públicos*

"Se declaran exentas de las disposiciones de las secs. 2131 a 2139 de este título, la Universidad de Puerto Rico, las otras instituciones de nivel universitario reconocidas de acuerdo con las leyes de Puerto Rico y las sociedades, asociaciones y agrupaciones de fines no pecuniarios, con más de diez (10) años de existencia, organizadas en el único propósito de fomentar y estimular la literatura y las bellas artes."

cano realiza parte de esa función brindando oportunidades de solaz y esparcimiento a sus asociados.

Considerando todas las circunstancias expuestas, y los hechos particulares de este caso, resolvemos que la asociación apelante tiene derecho a la exención provista en el inciso (e) del artículo 291 del Código Político. Como cuestión de realidad, este problema de exenciones tiene que decidirse mediante un análisis de los hechos específicos de cada caso, y aquí predominan los factores favorables a la concesión. Los factores desfavorables que puedan concurrir no son de tal peso decisivo que deban derrotar "el propósito legislativo discernible" de conceder la exención.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 16 de agosto de 1955.*

