PROCTOR MANUFACTURING CORPORATION, demandante y recurrente, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número:* R-63-231      *Resuelto:* 1 de marzo de 1965

*Baker & Woods, Luis F. Candal* y *Gilberto Mayo Aguayo,* abogados de la recurrente; *J. B. Fernández Badillo, Procurador General, Rodolfo Cruz Contreras* y *Manuel Tirado Viera, Procuradores Generales Auxiliares,* abogados del recurrido.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Sostiene la recurrente, Proctor Manufacturing Corporation, que los pagos que recibió bajo una póliza de seguro "de uso y ocupación" por concepto de beneficios netos que su fábrica dejó de percibir durante las varias semanas que se vio obligada a disminuir sus operaciones debido a un fuego, no son tributables, pues constituyen beneficios exentos bajo la Ley de Exención Industrial de Contribuciones de Puerto Rico (Ley Núm. 184 de 13 de mayo de 1948) y la Ley de Incentivo Industrial de Puerto Rico de 1954 (Ley Núm. 6 de 15 de diciembre de 1953—13 L.P.R.A. secs. 241–251).([1]) No

---

([1]) Véanse: Rudick y Allan, *Tax Aspects of Operations Under the Puerto Rican Exemption Program,* N.Y.U., 7 Tax L. Rev. 403 (1951–52), suplementado varias veces por publicación privada por la Administración de Fomento Económico, la última en 1962 y por addendum de 1963; Bhatia, *Tax Exemption in a Developing Economy—A Case Study of Puerto Rico,* 13 Nat'l Tax J. 341 (1960); Goldman, *Tax Exemption in Puerto Rico and The Internal Revenue Code,* 13 Institute on Federal Taxation, pág. 1193 (1955); Baker, *Tax Exemption as a Means of Attracting Industry,* 20 Geo. Wash. L. Rev. 253 (1951–52); Baker, *Puerto Rico's Program of Industrial Tax Exemption,* 18 Geo. Wash. L. Rev. 327 (1949–50); Baker y

tiene razón y, por lo tanto, confirmamos la sentencia del tribunal de instancia al efecto de que por no ser el ingreso en cuestión derivado de la producción de un producto manufacturado, dicho ingreso es tributable.

No existe controversia en cuanto a los hechos que dan margen a la cuestión elevada a nuestra consideración. La recurrente solicitó y obtuvo una concesión de exención de contribuciones bajo la referida Ley de Exención Industrial de Contribuciones de Puerto Rico en relación con la producción de determinado producto manufacturado. Subsiguientemente, la recurrente eligió ser exenta bajo la Ley de Incentivo Industrial de Puerto Rico de 1954. Dicha concesión de exención estaba en toda su fuerza y vigor cuando a fines de 1957 ocurrió un fuego en la fábrica de la recurrente que la obligó a reducir sus operaciones durante varias semanas. Como resultado de esto, no obtuvo beneficios durante este período. La recurrente tenía entonces en vigor una póliza de seguro "de uso y ocupación" extendídale por la Philadelphia Manufacturers Mutual Insurance Company que, en lo pertinente, disponía:

"En caso de pérdida de Uso y Ocupación de la propiedad aquí especificada, esta Compañía será responsable bajo las condiciones que a continuación se describen por la Pérdida efectivamente sufrida de lo siguiente:

(A) . . . . . . . . . . . . . . . . . . .

(B) Ganancia Neta antes de deducirse las contribuciones sobre ingreso que no ha podido ser obtenida durante el período de interrupción de la producción o la suspensión de las operaciones del negocio."

La recurrente recibió bajo la referida póliza la suma de $43,709.05, por concepto de beneficios netos que dejó de percibir durante el período de disminución de operaciones previamente indicado. En 16 de julio de 1961, el Secretario de

---

Beckerleg, *Industrial Tax Exemption in Puerto Rico*, XVIII Rev. Jur. U.P.R., pág. 283 (1949); Baker y Curry, *Taxpayer's Paradise in the Caribbean*, 1 Vand. L. Rev. 194 (1947–1948).

Hacienda de Puerto Rico notificó a la recurrente una determinación final de deficiencia contributiva por la suma de $12,080.18, vencidos y debidos con relación al ingreso de la recurrente por el año 1958. No conforme la recurrente, instó acción en el Tribunal Superior, Sala de San Juan, solicitando sentencia al efecto de que la determinación del recurrido carece de mérito y que se ordene al recurrido cancelar o dejar sin efecto la deficiencia en cuestión. El recurrido aceptó los hechos con excepción de la incorrección o ilegalidad de la determinación de deficiencia. Trabada así la contienda, el tribunal de instancia dictó sentencia declarando sin lugar la demanda por la razón de que "La suma recibida constituye un ingreso. Art. 112 (f) (8), Reglamento Ley de Contribuciones sobre Ingresos 1954 . . ." y que "No siendo el ingreso derivado directamente de operaciones industriales de la demandante, la suma de $43,709.05 está sujeta al pago de contribución sobre ingresos."

En el recurso ante nos, la contribuyente en apoyo de su solicitud de revisión apuntó la comisión por el tribunal sentenciador de los siguientes tres errores:

1.—"Cometió error de derecho el tribunal a quo al aplicar a este caso el Art. 112 (f) (8) del Reglamento de la Ley de Contribuciones sobre Ingresos de 1954, por ser dicho artículo aplicable únicamente a personas y entidades no exentas, siendo la demandante-recurrente una entidad exenta del pago de contribuciones sobre ingresos."

2.—"Cometió error de derecho el tribunal a quo al interpretar restrictivamente las disposiciones de la Ley de Incentivos Industriales cuando procede en este caso, considerados los propósitos de dicha ley, una interpretación liberal que no derrote los dichos propósitos."

3.—"Cometió error de derecho el tribunal a quo porque la interpretación dada por el tribunal a los mencionados estatutos discriminaría contra las industrias exentas haciéndole indeseable a éstas el uso de contratos que aseguren su continuidad de operación, medio comercialmente deseable y, por más asequible a industrias no exentas."

Por estar íntimamente relacionados entre sí, discutiremos estos tres apuntamientos conjuntamente.

El Art. 112 (f) (8) del Reglamento de la Ley de Ingresos de 1954 (13 R.&R.P.R. sec. 3112 (f)–1 (c) (8) ), lee así:

"El producto de una póliza de uso y ocupación que por sus términos asegure contra la pérdida efectiva sufrida en las ganancias del negocio, no es producto de una conversión involuntaria, sino ingresos, del mismo modo que las ganancias, de las cuales son sustitutos, lo hubiesen sido."

Arguye la recurrente que si las cantidades en cuestión son *"ingresos, del mismo modo que las ganancias de las cuales son sustituto, lo hubiesen sido"*, la única interpretación de esta disposición es que si las ganancias que son sustituidas por el producto de la póliza no eran tributables, tampoco lo es dicho producto. Al efecto nos dice que habiéndose resuelto que si los beneficios que se hubieran obtenido eran tributables también lo es el producto de la póliza de uso y ocupación que lo sustituye, (²) a *contrario sensu*, debe concluirse que si la persona no paga contribución sobre tales beneficios (por estar exenta, según lo indicamos previamente) tampoco debe pagar contribución sobre el sustituto de tales ganancias.

A los efectos de resolver, debemos determinar si el referido pago en sustitución de beneficios, hecho a la recurrente bajo la referida póliza de uso y ocupación, es en derecho, ingreso derivado de fomento industrial, ya que el beneficio exento de contribuciones bajo la ley sobre exención contributiva de 1954, antes citada, que es la ley aplicable en este caso, es sólo aquél que proviene de fomento industrial. (³) Dicha ley define

---

(²) *Guthrie* v. *U.S.*, 323 F.2d 142 (6th Cir. 1963) ; *Miller* v. *Hocking Glass Co.*, 80 F.2d 436 (6th Cir. 1935) ; *Oppenheim's, Inc.* v. *Kavanagh*, 90 F.Supp. 107 (D.C. Mich. S.D. 1950).

(³) El inciso (a) de la Sec. 1 de la Ley de Incentivo Industrial de Puerto Rico de 1954 lee así:

"(a) Se exime a los negocios exentos de la contribución sobre ingresos sobre su *ingreso de fomento industrial* derivado durante 10 años a partir de la fecha del comienzo de sus operaciones según tal comienzo se determine por el Secretario de Hacienda conjuntamente con el Administrador

el término ingreso de fomento industrial como el derivado (1) de la producción de un producto manufacturado, (2) de propiedad dedicada a fomento industrial y (3) de la operación de hoteles que llenen determinados requisitos establecidos por dicha ley. (Inciso (a) de la Sec. 2 de la Ley Núm. 6 de 15 de diciembre de 1953—13 L.P.R.A. sec. 242(a).)

De manera que para que el ingreso en cuestión esté exento de la contribución sobre ingresos en vigor (a) la empresa que lo obtiene, en este caso la recurrente, debe haber recibido una concesión de exención contributiva (⁴) y (b) el ingreso debe derivarse de su producción de un producto manufacturado. En este caso se cumple con la primera condición, pero en cuanto a la segunda el hecho es que el ingreso en cuestión es un sustituto del ingreso que, a no ser por ·el fuego, la recurrente hubiera derivado de la producción de un producto manufacturado. ¿Puede concluirse que por ser un ingreso sustituto del ingreso de producción, debe considerarse el ingreso en cuestión como uno que proviene de fomento industrial, y por lo tanto, exento del pago de contribuciones al recibirlo la recurrente? A esos efectos debemos determinar la intención o propósito que tuvo la Asamblea Legislativa al aprobar la ley en cuestión. Pero antes debemos reiterar, en

de Fomento Económico del Estado Libre Asociado de Puerto Rico o por el Gobernador del mismo en caso que aquéllos no se pongan de acuerdo en cuanto a la fecha del referido comienzo de operaciones." (Énfasis nuestro.)

(⁴) El inciso (a) de la Sec. 5 de la referida ley (13 L.P.R.A. sec. 245(a)) provee que:

"(a) Solicitudes.—Cualquier persona natural o jurídica que ha establecido o propone establecer en Puerto Rico un negocio elegible puede solicitar del Gobernador de Puerto Rico los beneficios de esta Ley. Las concesiones de exención contributiva bajo esta Ley se considerarán de la naturaleza de un contrato entre el concesionario y el Estado Libre Asociado de Puerto Rico. El Gobernador podrá incluir en las concesiones de exención contributiva concedidas bajo esta Ley aquellos términos y condiciones que, a su juicio, promuevan los propósitos de fomento industrial [de las secciones 241 a 251 de este título]" (13 L.P.R.A. sec. 245(a)).

cuanto a la regla de que las exenciones contributivas deben ser interpretadas restrictivamente, lo que dijimos en *Club Yaucano v. Srio. Hacienda,* 83 D.P.R. 623, 629 (1961),es decir que: "Sin embargo, esto no significa que la ley tenga que ser interpretada con un celo de necesaria exclusión de los beneficios que concede la exención, sino meramente que no debe extenderse más allá del propósito legislativo discernible . . ., o sea, que la interpretación no puede ser tan estrecha y literal que derrote el propósito mismo del estatuto . . . Todo cuanto se requiere es que la interpretación sea razonable." El propósito legislativo de limitar la exención de ingresos a aquéllos que en realidad constituyen ingresos derivados de las operaciones de manufacturar o elaborar artículos de comercio o sea "de fomento industrial", "de la producción de productos manufacturados", (5) se deduce fácilmente de la Exposición de Motivos de la Ley de Incentivo Industrial de Puerto Rico de

---

(5) En su Art. 2(g) la ley en cuestión (13 L.P.R.A. sec. 242(g)) define el término "producto manufacturado" así:

"El término 'producto manufacturado' significa no tan sólo los productos transformados de materias primas en artículos de comercio terminados a mano o por maquinaria, los productos agrícolas producidos mediante el proceso conocido por nutricultura (hydroponics), sino también cualquier producto en relación con el cual operaciones industriales sustanciales se realizan en Puerto Rico, que, a juicio del Gobernador, ameritan se trate como producto manufacturado dentro de los límites de esta Ley debido a su naturaleza y extensión, la tecnología envuelta, el empleo que se provea, otra contribución que la operación ha hecho o hará al bienestar del Estado Libre Asociado de Puerto Rico, o uno o más de tales factores; disponiéndose, sin embargo, que la operación se lleve a cabo sustancialmente como se representó originalmente por el peticionario de exención contributiva, con excepción de las enmiendas que el Gobernador haga a la concesión de exención contributiva, de acuerdo con su discreción, a petición del concesionario. La Oficina de Exención Contributiva Industrial tendrá autoridad para preparar reglamentos que gobiernen la aplicación de la anterior definición y tales reglamentos tendrán fuerza de ley, al ser aprobados por el Gobernador, y deberán ser publicados en uno o más periódicos de circulación general en Puerto Rico. La producción derivada de las operaciones mineras no se considerará como producto manufacturado a menos que sea beneficiada o en otra forma sustancialmente elaborada en Puerto Rico por el productor directamente o por empresa independiente."

1954, (⁶), es decir, de la realidad expresada, de que la exención contributiva va dirigida a fomentar y crear no tan sólo nuevas y adicionales fuentes de empleo en operaciones industriales sino a mantenerlas en operación para así reducir hasta ir eliminando el desempleo. Es el mismo propósito que resulta evidente de la Ley de Exención Industrial de Contribuciones de Puerto Rico de 1948 (véanse Exposición de Motivos y la Sec. 4 (a) (2) de esta ley), así como de la Ley de Incentivo Industrial de Puerto Rico de 1963, enmendada por la Ley Núm. 99 de 26 de junio de 1964. (Véanse Secs. 1 (a) (1) y (2) y 2 (a) (1) de esta ley (⁷)—1 Servicio Legislativo de Puerto Rico, pág. 419 y ss. (1963) y 2 Servicio Legislativo de Puerto Rico, pág. 556 (1964).) Los resultados obtenidos en la aplicación de toda esta legislación desde 1948 hasta el final de 1964 es prueba elocuente de la medida en que se ha logrado el referido propósito legislativo a diciembre de 1964. (⁸)

| | |
|---|---|
| Fábricas promovidas y ayudadas | 1,144 |
| Hoteles establecidos | 66 |
| Empleado directo | 84,834 |

(Se estima por los economistas que el

---

(⁶) En la Ley Núm. 6 de 15 de diciembre de 1953, cuyo título breve es Ley de Incentivo Industrial de Puerto Rico de 1954, se hace constar en su Exposición de Motivos "que el objetivo de largo alcance del programa de fomento económico es proveer un ingreso neto mínimo de $2,000 por año para la gran mayoría de las familias. . . . Que será necesario crear por lo menos 60,000 empleos directos adicionales en la industria para alcanzar el objetivo del programa de fomento económico que es proveer un mínimum de 80,000 nuevos empleos industriales en la década que termina en 1960; que este objetivo requiere (a) operaciones industriales más diversificadas. . . . Que una estructura industrial estable y que esté en condiciones de proveer amplia oportunidad de empleo con jornales más altos a la creciente fuerza trabajadora puertorriqueña. . . ."

(⁷) Novak, *A New Appraisal of Puerto Rico in the Light of Recent Tax Legislation*, XXIV, Núm. 4, Rev. C. Abo. P.R., pág. 671 (1964); Mihaly, *Tax Advantages of Doing Business in Puerto Rico*, 16 Stan. L. Rev., 75 (1963).

(⁸) Estadísticas suministradas por la Compañía de Fomento Industrial de Puerto Rico.

La estadística sobre inversión es a junio de 1962 y la de hoteles a junio de 1964.

programa de fomento industrial ge-
nera empleos para el mismo número
de otras personas en otras actividades
de la economía)

| | |
|---|---|
| Nómina semanal en empleos directos | $3,285,847 |
| Inversión particular | $720,319,000 |
| Inversión gubernamental | $57,322,000 |

No hay duda de que el ingreso que, en ausencia del fuego y que como resultado de sus operaciones industriales hubiera recibido la recurrente, estaría exento de contribución sobre ingresos. Pero ese tipo de ingreso no lo recibió la recurrente. En efecto, en sustitución del mismo, la recurrente recibió otro tipo de ingreso, de otra fuente completamente distinta en su naturaleza y por su origen de sus operaciones industriales, o sea, de acuerdo y por razón de una póliza de seguro. Nada se dispone en la ley en cuestión que expresa o implícitamente exima tal ingreso de contribución, ni puede decirse que el mismo es el tipo de ingreso que se deriva como resultado directo del empleo de trabajadores, de fuentes de empleo, de operaciones industriales, de la manufactura o elaboración de artículos de comercio, en síntesis de la producción de artículos manufacturados.

■ Extender el concepto "ingreso de fomento industrial" para que incluya ingreso derivado de una póliza de uso y ocupación[9] trastornaría el propósito legislativo y alteraría el delicado balance que estas leyes de exención pretende lograr. De igual manera, tendríamos que interpretar, si decidiéramos que tal reembolso es "ingreso de fomento industrial", que reembolsos provenientes de pólizas que proveen para pagos en sustitución de ingresos dejados de percibir debido a huelgas y paros obreros[10] también constituyen

---

[9] *Business interruption or use and occupancy insurance,* 83 A.L.R.2d 885.

[10] *Losses covered by insurance against strikes, lockouts, or other labor disputes,* 52 A.L.R. 162.

"ingreso de fomento industrial". Es obvio cuán lejos del objetivo que persiguen estas leyes nos apartaríamos al llegar a una conclusión como ésta.

El propósito de la exención en cuestión es la realización de un fin social y económico de gran necesidad y bienestar para la comunidad. Si el ingreso no se deriva de las actividades que en el curso normal y corriente de los negocios propenden a la realización del propósito legislativo y que constituyen las funciones propias y adecuadas para lograrlo— y que se previeron como se puede razonablemente determinar de las disposiciones del estatuto bajo consideración—dicho ingreso no cae dentro del ámbito de la exención. Al suspender sus operaciones industriales, que era la función social provista por el estatuto en casos como éste, aun por causa fortuita, la recurrente dejó de cumplir con el requisito operacional requerídole como condición de la exención contributiva que reclama.

A los fines de dar curso a la contención de la recurrente, tendríamos que considerar los pagos del seguro en cuestión como ingreso de fomento industrial teórico, cosa que no estamos autorizados en derecho para hacer. En *Guthrie*, supra, con motivo de dos fuegos, se produjeron y paralizaron por un tiempo las operaciones de una mina de carbón lo que redujo la cantidad y calidad del carbón extraído y por consiguiente el montante de sus ventas, lo que trajo por resultado que las ganancias de la operación de la mina se redujeron y, luego del segundo fuego se sufrió una pérdida. Para cubrir la reducción en beneficios y la pérdida, la sociedad minera en cuestión recibió pagos sustanciales de acuerdo con una póliza de interrupción de negocios. Se resolvió que aunque la contribuyente tiene derecho a una reserva por agotamiento basada en el precio de venta del carbón realmente minado, beneficiado y vendido, el ingreso derivado de los pagos de seguro no deben incluirse como parte de la base sobre la cual se debe calcular la deducción por agotamiento, pues tales pagos de seguro no

constituyen ingreso de proceso minero. Dijo el tribunal en este caso que:

"El monto del seguro recobrado por el contribuyente en este caso representa su pérdida proveniente de su inhabilidad para operar tan gananciosamente luego del fuego como antes. Esto es así porque después del fuego, la sociedad no pudo elaborar su carbón en todas sus 27 gradaciones en que lo mercadeaba. Si el contribuyente no hubiera tenido la provisión de tener seguro contra la interrupción en los negocios, su ingreso bruto total derivado de la minería hubiera sido la cantidad que recibió por el carbón que pudo minar y vender realizando lo mejor que podía con sus lesionados medios de operación. El hecho que este contribuyente evitara esas consecuencias mediante seguro no hace que los ingresos del seguro· constituyan parte del precio que recibió por su carbón. Creemos que tales ingresos de ventas es lo que constituye ingreso bruto de la minería. No podemos ampliar el ámbito del estatuto mediante la designación del ingreso de seguro como de ventas. Hemos resuelto previamente que el ingreso del seguro de interrupción no constituye venta de propiedad. . . . Hemos dado consideración al peso del argumento del apelante al efecto de que el ingreso del seguro cubre la reducción en el ingreso de las ventas y por lo tanto en cuanto a la reserva de agotamiento debe considerarse como tal. El Congreso, sin embargo, no proveyó para tal sustitución y el hacerlo así requeriría que creáramos un ingreso bruto de minería, teórico en vez de uno real y verdadero. . . ."

En el caso ante nos lo que la recurrente en realidad propone es que consideremos el ingreso del seguro de uso y ocupación que recibió como un ingreso de fomento industrial teórico, en sustitución del ingreso derivado de las operaciones de producción de un producto manufacturado que no pudo realizar, y que es el ingreso que exime de contribución la Ley de Incentivo Industrial de Puerto Rico de 1954. Dicha ley no da facultad para hacer tal determinación.

. Se arguye que el tributar al sustituto de algo exento por ley priva a la industria exenta de utilizar el contrato de seguro o·por lo menos hace su uso indeseable y que, además, tal determinación no estaría en armonía con los propósitos de la

referida legislación de "proporcionar . . . incentivos y facilidades que hagan comercialmente atractivo el establecimiento de nuevas industrias . . ." y de "no aprobar legislación alguna que menoscabe o limite tal exención o pueda frustrar los fines de esta ley". No existe fundamento alguno para sostener esta contención. No se ha demostrado que la tributación impuesta al producto del referido seguro priva a la empresa de contratar y utilizar dicho seguro o que hace su uso menos deseable. Por el contrario, aunque el ingreso de tal fuente esté sujeto a tributación, es juicioso, económicamente indicado, beneficioso y una práctica de buena administración industrial el mantener una cubierta de seguro como ésa. Como hemos indicado previamente la exención del ingreso derivado de tal seguro no cae dentro de los términos de la exención concedida a la recurrente. Obviamente esta conclusión ni menoscaba o limita dicha exención ni frustra los fines de la ley que la provee.

*Por las razones indicadas, se confirmará la sentencia dictada por el tribunal de instancia en este caso, en 5 de agosto de 1963.*