Merrimack,
No. 4502.

INSTITUTE FOR TREND RESEARCH

v.

NEWELL BROWN, *Director, Division of Employment Security.*

Argued June 5, 1956.

Decided July 6, 1956.

*Orr & Reno* (*Mr. Reno* orally), for the plaintiff.

*Winslow H. Osborne, James M. Riley, Jr.* and *Edward F. Smith* (*Mr. Osborne* orally), for the defendant.

KENISON, C. J. The question presented is whether or not the Institute is exempt from payment of unemployment compensation contributions as " . . . a corporation . . . organized and operated exclusively for . . . scientific . . . or educational purposes . . . no part of the net earnings of which inures to the benefit of any private shareholder or individual" under RSA 282:1 (H) (4) (h).

An examination of the articles of agreement, the by-laws and the records of the Institute support the Court's finding that it was organized exclusively for scientific or educational purposes. While this type of evidence is not conclusive in determining the character of its operations, it was sufficient to establish its organizational exempt status. *Henry* v. *American Kennel Club*, 53 N. Y. S. (2d) 878; *Benton County* v. *Allen*, 170 Ore. 481. *Cf. Consumers' Research, Inc.* v. *Evans*, 128 N. J. L. 95, 132 N. J. L. 431.

The operational status of the Institute is more troublesome. *California Employment Com.* v. *Betthesda Foundation*, 54 Cal. App. (2d) 348. In considering whether a corporation is operated for scientific or educational purposes, we are more concerned with what it did rather than what it was authorized to do by its articles of agreement. *In re Constitutional Gov. League*, 23 Wash. (2d) 792. It appears from the special findings of fact made by the Trial Court that "no substantial part of the income of the Institute . . . has been used for research or other services contemplated in . . . " the exemption section of the statute (RSA 282:1 (H) (4) (h) ) and that "less than 10 per cent of the income . . . has been used for research outside of the specific research undertaken for private business organizations." Thus more than 90 per cent of the Institute's research was paid for by and became the exclusive property of the private business organizations for whom the work was performed.

It is recognized that a corporation does not lose its exempt status under a statute which requires the payment of contributions or taxes merely because it has a net income (*Trinidad* v. *Sagrada Orden*, 263 U. S. 578) or makes a profit (*Roche's Beach, Inc.* v. *Commissioner*, 96 F. (2d) 776) or charges fees for its services. *Debs Memorial Radio Fund* v. *Commissioner*, 148 F. (2d) 948. The destination of the income, and not the source of the income, determines the exemption. *American Legion* v. *Williamson*, 73

S. D. 250; *Scripture Press Foundation* v. *Annunzio*, 414 Ill. 339. However in a more recent federal case it was said: "the presence of a single noneducational purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly educational purposes." *Better Business Bureau* v. *United States*, 326 U. S. 279, 283. See anno. 90 L. ed. 73. *Cf. Commissioner* v. *Orton*, 173 F. (2d) 483.

In view of the Institute's limited endowment of approximately $4,000, it may have been necessary for it to operate the way it did in order to produce income but the small percentage of its income devoted to non-private research makes it difficult to reconcile its practice with the statutory requirement that it be operated exclusively for educational or scientific purposes. Willcox, The Coverage of Unemployment Compensation Laws, 8 Vand. L. R. 245, 273 (1955). The total activities of the Institute were directed fundamentally to private research for scientific industries rather than to basic trend research available generally to the public. Here, as in *Better Business Bureau* v. *United States, supra,* there was a "commercial hue permeating petitioner's organization" even though that may not have been the founder's intent or desire. There are some indications from the record that future plans of the Institute encompass activities of a more public nature but this does not control its present exemption status under the Unemployment Compensation Law. It may be that the Institute has made or will make a substantial contribution to trend research but it has not operated exclusively for scientific or educational purposes in its attempt to do so within the meaning of the Unemployment Compensation Law. See *Institute for Trend Research* v. *United States,* 230 F. (2d) 611.

Since the plaintiff is not exempt from payment of unemployment contributions under RSA 282:1 (H) (4) (h) it is unnecessary to consider whether any part of the net earnings of the corporation "inure[s] to the benefit of any private . . . individuals" (*Virginia Mason Hosp. Ass'n* v. *Larson,* 9 Wash. (2d) 284) or to pass on the other exceptions which have been raised by the defendant.

*Remanded.*

All concurred.