ALFREDO NAZARIO TIRADO, SECRETARIO DEL TRABAJO DE PUERTO RICO, demandado y recurrente, *v.* ASOCIACIÓN DE SEÑORAS DAMAS DEL SANTO ASILO DE PONCE, demandante y recurrida.

*Número:* R-65-173      *Resuelto:* 24 de febrero de 1967

138

*Guillermo Estrella Frasqueri* y *Lydia A. Torres González,* abogados del recurrente; *José Guillermo Vivas* y *Jorge Lucas P. Valdivieso, Jr.,* abogados de la recurrida.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala, y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

La cuestión planteada en este caso es si la recurrida, Asociación de Señoras Damas del Santo Asilo de Ponce, tiene derecho al reintegro de las contribuciones pagadas por ella en virtud de la Ley de Seguridad de Empleo de Puerto Rico. Esto requiere que determinemos si la mencionada entidad está o no está exenta del pago de las contribuciones que impone dicha ley.

█ Concluimos que debido a que la recurrida opera un hospital principalmente en beneficio de pacientes pudientes y pacientes hospitalizados a base de contratos negociados con distintas instituciones hospitalarias, gubernamentales y una privada, la recurrida no es administrada exclusivamente para fines caritativos y por lo tanto no está exenta del pago de la contribución en cuestión.

En su demanda en este caso la recurrida reclama la devolución de $53,934.72 pagados por ella equivocadamente al recurrente por concepto de tal contribución durante los años 1957 a 1962, ambos inclusive. Alega que está exenta de la misma, exención que el recurrente se ha negado a reconocer por lo cual denegó el rembolso solicitado.

Las disposiciones de la Ley de Seguridad de Empleo y de los Certificados de Incorporación de la recurrida, que entran en juego en la consideración de la referida cuestión son las siguientes:

"Este Capítulo será conocido como Ley de Seguridad de Empleo de Puerto Rico, bajo cuyo título podrá ser citado y *será liberalmente interpretada para cumplir su propósito de promover la seguridad de empleos facilitando* las oportunidades de trabajo por medio del mantenimiento de un sistema de oficinas

públicas de empleo y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas.

La Asamblea Legislativa por la presente declara su intención de proveer los medios para realizar los propósitos de este capítulo en cooperación con las correspondientes agencias de otros estados y del gobierno federal." (¹) (Énfasis nuestro.) (29 L.P.R.A. sec. 701.)

El término empleo no incluirá:

"   .      .      .      .      .      .      .      ."

"(S) El servicio prestado como empleado de una *corporación*, institución, sociedad, asociación, fundación o cualquier fondo comunal o cualquiera otra organización descrita en la sec. 501(c)(3) del Código de Rentas Internas de Estados Unidos *creados y administrados exclusivamente para fines* religiosos, *caritativos*, científicos, literarios o educativos o para la prevención de la crueldad con los niños o con los animales, *ninguna parte de cuyas utilidades netas redunde en beneficio de algún accionista o individuo particular*; siempre que dicha organización esté exenta de contribución sobre ingresos bajo la sec. 501(a) del Código de Rentas Internas. Esta exención no será

---

(¹) En la Exposición de Motivos de esta ley se dice que:

"La inseguridad económica producida por el desempleo es una seria amenaza a la salud, seguridad y bienestar del Pueblo de Puerto Rico. El desempleo es, por lo tanto, materia de interés e incumbencia general que requiere la adopción por la Asamblea Legislativa de medidas adecuadas tendientes a evitar su desarrollo y a aliviar la carga que el mismo produce y que recae sobre el trabajador desempleado y su familia. El logro de un seguro social requiere protección contra este gran riesgo a nuestra vida económica. Este objetivo puede obtenerse mediante el funcionamiento de oficinas públicas y gratuitas de empleo, adoptando métodos apropiados para reducir al mínimo el auge del desempleo y mediante la acumulación sistemática de fondos durante períodos de empleo que permitan el pago de beneficios durante períodos de desempleo, manteniendo así el poder adquisitivo, promoviendo la movilidad y aprovechamiento de las mejores destrezas de aquellos trabajadores desempleados, y limitando las serias consecuencias sociales del desempleo. Por lo tanto, la Asamblea Legislativa declara que los ciudadanos de Puerto Rico necesitan de la adopción de la presente medida, dentro del poder de policía del Estado Libre Asociado de Puerto Rico para el establecimiento y mantenimiento de oficinas públicas y gratuitas de empleo y para el proveimiento compulsorio de fondos de reserva para ser usados en beneficio de las personas desempleadas."

extensiva al servicio prestado en relación con la construcción, demolición, ampliación, remodelación o reparación sustancial de edificios y otras obras análogas." (Énfasis nuestro.) (29 L.P.R.A. sec. 702(k)(6)(S).)

El Certificado de Incorporación de la recurrida, según fue enmendado en 1951 dispone que: (1) Art. 5.—"Los fines de la Asociación serán la asistencia hospitalaria de enfermos pobres gratuitamente y también la de enfermos pudientes que pagaren las cuotas que designen la Junta de Directoras, con destino al sostenimiento del hospital establecido por la asociación en Ponce, P.R., bajo el nombre de 'Santo Asilo de Damas', así como el sostenimiento de un asilo u hogar para niños huérfanos, una escuela de enfermeras y cualquier otra obra benéfica que la Asociación crea conveniente establecer"; (2) Art. 7.—"La Corporación será regida por la Junta general de socios y por una Junta de Síndicos o Directores compuesta de catorce personas, nueve señoras y cinco caballeros elegidos en la primera Junta General que deberá celebrarse . . ."; (3) Art. 9.—para ingresar como socio de esta institución mediante la aprobación de ¾ de los socios que componen la Junta de Directores, hay que ser residente de Ponce; y (4) Art. 10.—"Los recursos de la Asociación consistirán (a) en las rentas de sus bienes adquiridos por donaciones inter vivos y mortis causa. (b) En los donativos que se hagan a la institución. (c) En las cuotas pagadas por los enfermos pudientes que recibieren asistencia en el hospital o asilo de la asociación; y (d) en cualquier otro recurso o ingreso permitido por las leyes."

En su extensa y bien razonada opinión, el tribunal de instancia resolvió que la recurrida está exenta del pago de contribuciones por seguro de desempleo; que indebidamente pagó y por tanto procede el reintegro de las contribuciones pagadas, por los años 1959, 1960, 1961 y 1962, montantes a $39,445.04, con intereses al 6% anual; que el reintegro de las contribuciones pagadas por los años 1957 y 1958 mon-

tantes a $6,545.24 y $7,944.44 respectivamente, no procede por estar prescrito, según fue estipulado por las partes.

En síntesis, dicho tribunal basó su dictamen en que la recurrida es una corporación organizada para fines no pecuniarios, sin acciones; que sus únicos socios son las personas que constituyen su junta de directores ninguno de los cuales, así como ningún otro individuo en particular, recibe beneficio alguno de ella; que el ingreso que recibe de sus bienes consistentes de fincas rústicas y urbanas, cerca de un millón de dólares en acciones de bancos, y de su hospital, se dedicó a sufragar obras caritativas tales como asistencia a pacientes pobres, mantenimiento de un orfelinato, escuela de enfermeras y al fin científico de entrenamiento de médicos residentes e internos. En apoyo de su conclusión dijo que la intención legislativa fue que la exención en cuestión se interpretase liberalmente, y citó los casos de *Trinidad* v. *Sagrada Orden*, 263 U.S. 578 (1923), y otros más.

### Apuntamientos del Recurrente

Apunta el recurrente que la recurrida no está cumpliendo con sus fines pues se dedica a actividades comerciales consistentes en poseer acciones de bancos, recibir ingresos del arrendamiento de fincas y en celebrar contrato con entidades privadas y gubernamentales para proveer sus servicios hospitalarios a socios o beneficiarios de éstos; que su situación se asemeja a la del caso de *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 66 D.P.R. 659 (1946); y que las contribuciones en este caso fueron pagadas voluntariamente y su rembolso debe ser sin interés (29 L.P.R.A. sec. 709(d)). En apoyo de estos apuntamientos cita varios casos, entre ellos *Hassett* v. *Associated Hospital Service Corporation*, 125 F.2d 611 (1st Cir. 1942); *Smith* v. *Reynolds*, 43 F.Supp. 510 (D.C. Minn. 1942); *Consumers Research* v. *Evans*, 24 A.2d 390 (N.J. 1942).

## *Hechos del Caso*

A los fines de un mejor entendimiento de los hechos del caso es necesario indicar que: (a) los bienes de la recurrida consisten de (1) 1,790 acciones del Banco de Ponce y 970 acciones del Crédito y Ahorro Ponceño, conjuntamente valoradas en $958,050; (2) tres fincas rústicas con una cabida total de 581.75 cuerdas que le producen unos $15,000 de ingreso; y (3) fincas urbanas que le proveen un ingreso de $4,500 a $5,500 al año. La recurrida ha realizado ventas de fincas por un valor de $308,389.64 y ha comprado otras desde que le fueron legados varios bienes inmuebles; (b) de acuerdo con los propios datos suministrados por la recurrida, durante los años en controversia fueron atendidos en su hospital pacientes referidos por empresas privadas, asociaciones hospitalarias o agencias gubernamentales, tales como La Cruz Azul, Central Mercedita, Administración de Veteranos, Fondo del Seguro del Estado, Triple SSS, Servicio Federal de Salud Pública y Rehabilitación Vocacional, con las que la recurrida había celebrado contratos por virtud de los cuales la recurrida convino en proveer servicios hospitalarios mediante paga a socios o pacientes de tales instituciones o agencias; estos pacientes se denominaban de "part charity", es decir, de "caridad parcial", debido a que el ingreso obtenido bajo tales contratos no cubría el costo de los servicios que la recurrida prestaba a tales pacientes; (c) en adición a los pacientes mencionados atendió la recurrida pacientes clasificados como "particulares", es decir, pacientes que pagaron por sus servicios de acuerdo con la tarifa regular de la recurrida; y (d) pacientes de "caridad", es decir, pacientes atendidos a los que no se les cobró por los servicios prestados.

Durante los años en controversia, es decir, 1959, 1960, 1961 y 1962, la proporción de los mencionados pacientes en el total de pacientes fue la siguiente:

| | 1959 por ciento | 1960 por ciento | 1961 por ciento | 1962 por ciento |
|---|---|---|---|---|
| "Particulares" | 44.41 | 50.28 | 46.10 | 50.97 |
| "Part Charity" | 49.42 | 44.26 | 48.58 | 43.42 |
| "Caridad" | 6.17 | 5.46 | 5.32 | 5.61 |

La prueba demuestra que (1) la recurrida ha sufrido pérdidas en los servicios prestados a los pacientes referidos por las instituciones hospitalarias que contrataron sus servicios—los llamados pacientes "part charity"; y (2) durante el período en controversia la recurrida tuvo los siguientes ingresos netos, luego de haber descontado los pagos de la contribución por seguro de desempleo.

| | |
|---|---|
| 1959 | $ 9,972.28 |
| 1960 | 28,298.37 |
| 1961 | 73,172.03 |
| 1962 | 18,070.20 |

Debemos señalar, además que la recurrida goza de exención de la contribución territorial así como de arbitrios por considerarse una organización de fines no pecuniarios. Por virtud de la Ley Núm. 41 de 29 de mayo de 1964 (13 L.P.R.A. sec. 199), específicamente se le eximió del pago de toda clase de contribuciones e impuestos a condición de que establezca y mantenga en su hospital un departamento o sala para prestar servicios de dispensario y hospitalización a personas indigentes.

### Derecho Aplicable

La Sec. 2(k)(6)(S) de la Ley de Seguridad de Empleo, *supra*, establece, entre otros, los siguientes requisitos de elegibilidad de una asociación a la exención contributiva que provee:

(1) que esté creada exclusivamente para uno de los fines exentos.

(2) que esté administrada exclusivamente para uno de los fines exentos.

(3) que ninguna de sus utilidades netas redunde en beneficio de algún accionista o persona particular.

En ausencia de uno de los anteriores requisitos no hay derecho a la exención. *Department of Mo., V.F.W.* v. *Division of Emp. Sec.*, 317 S.W.2d 837 (Ct. App. Kan. 1958); *United States* v. *Community Services*, 189 F.2d 421 (4th Cir. 1951); *Employment Commission* v. *Betthesda Foundation*, 128 P.2d 874 (Ct. App. Cal. 1942).

La recurrida reclamó la exención en cuestión sobre la base de que estaba creada y administrada exclusivamente para fines caritativos.

De acuerdo con el informe de la Comisión de Hacienda de la Cámara de Representantes, el alcance de la Resolución Conjunta Núm. 125 de 1957, enmendatoria de la disposición eximente en la Ley de Seguridad de Empleo, es el eximir el servicio prestado por los empleados de una corporación para fines no pecuniarios. Dicho informe no puede interpretarse como que la ley exime a estas corporaciones del pago de la contribución patronal que provee, por el solo hecho de que no se organizaron con fines de lucro. La ley claramente provee otras condiciones adicionales que el patrono viene obligado a cumplir a fin de cualificar para tal exención. El referido informe no tiene otro alcance que el de puntualizar las entidades a favor de quien se proveyó la exención.

■ ¿Cuál es la norma que debemos seguir en la interpretación de la referida disposición de la ley en cuestión? La propia ley dispone que "será liberalmente interpretada para cumplir su propósito de promover la seguridad de empleos . . . y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas." En *Re Oakwood Cemetery Assn.*, 245 N.Y.S. 2d 262 (1963), se dijo que "La Ley de Seguro de Desempleo debe

interpretarse de manera que provea protección al mayor número de empleados posibles y, por lo tanto, las exenciones de la ley deben reconocerse sólo cuando claramente se cumple con las normas legislativas." *Pickman* v. *Weltner*, 382 P.2d 298 (Kan. 1963); *Brown* v. *La Nasa*, 145 So.2d 132 (La. App. 1962). La exención bajo este tipo de legislación debe interpretarse estrictamente y debe demostrarse que el hospital que reclamó tal exención es operado sólo con un propósito caritativo. *La Societe Française, Etc.* v. *California Employ. Co.*, 133 P.2d 47 (Ct. App. Cal. 1943).

■ No obstante, se ha resuelto que el término "exclusivamente" usado en la disposición en cuestión significa "primordialmente", "principalmente", "en gran medida". *National Capital Girl Scout Coun.* v. *District Unemp. Comp. Bd.*, 231 F.Supp. 546 (D.Ct. D.C. 1964).

La dificultad que ha surgido en interpretar este tipo de exención consiste en que exenciones similares con respecto al pago de la contribución de ingreso se han interpretado liberalmente al extremo de haberse establecido la norma, proveniente del caso de *Sagrada Orden*, supra, al efecto de que lo decisivo no es la fuente del ingreso de la asociación— ésta puede tener ganancias netas, derivar un beneficio o cobrar por sus servicios y hasta poseer y administrar una actividad comercial—sino el uso que se le da a su ingreso y que éste no redunde en beneficio de alguna persona particular.([2]) Pero en *United States* v. *Community Services*, 189 F.2d 421, 427 (4th Cir. 1951), se dijo que la norma

---

([2]) Véanse los casos de *C. F. Mueller Co.* v. *Commissioner of Internal Revenue*, 190 F.2d 120 (3d Cir. 1951); *Squire* v. *Students Book Corp.*, 191 F.2d 1018 (9th Cir. 1951); *Willingham* v. *Home Oil Mill*, 181 F.2d 9 (5th Cir. 1950); *Commissioner of Internal Revenue* v. *Orton*, 173 F.2d 483 (6th Cir. 1949); *Commissioner of Internal Revenue* v. *Battle Creek*, 126 F.2d 405 (5th Cir. 1942); *Koon Kreek Klub* v. *Thomas*, 108 F.2d 616 (5th Cir. 1939); *Roche's Beach, Inc.* v. *Commissioner of. Internal Revenue*, 96 F.2d 776 (2d Cir. 1938).

establecida en *Sagrada Orden*, supra, ha sido debilitada en decisiones subsiguientes.

Por el contrario, se dictaminó en *In re Gem State Academy Bakery*, 224 P.2d 529 (Idaho 1950), que en la interpretación de la exención del pago de contribución bajo la legislación sobre compensación por desempleo no procede aplicar la norma de interpretación liberal de las exenciones del pago de la contribución sobre ingresos. Se dijo en este caso que "El término medio que ha recibido sanción judicial es que, tomando en consideración la interpretación estricta de la exención en contra de quien la reclama, pero reconociendo los beneficios que proveen tales instituciones de fines no pecuniarios y al mismo tiempo los propósitos de la ley de compensación por desempleo y la necesidad de interpretarla liberalmente, cada actividad será juzgada por sí sola. De manera que las actividades llevadas a cabo dentro de los campos de la religión, la ciencia, la literatura y la educación estarán exentas; y aquellas actividades que, no obstante ser realizadas por una de tales organizaciones, son actividades de naturaleza comercial, requieren que los empleados en las mismas reciban la protección de la ley de compensación por desempleo." (3) Resolvió el tribunal que no procedía exi-

---

(3) En Puerto Rico sólo hemos tenido ocasión de interpretar el alcance de la exención de la contribución territorial provista por el Art. 291 del Código Político (13 L.P.R.A. sec. 551(e)). Hemos dictaminado que la exención debe ser interpretada restrictivamente pero no "con un celo de necesaria exclusión de los beneficios que concede la exención, sino meramente que no debe extenderse más allá del propósito legislativo discernible"; que "tratándose de una exención in rem, no es decisiva la forma en que se estructuró la entidad demandante. . . sino que lo más importante es determinar el uso predominante que dicha asociación le ha dado a la propiedad"; que "Otro factor determinante es la forma en que opera sus actividades pero no la forma en que está distribuido el capital social de la asociación." Negamos la exención en *Catholic University of P.R.* v. *Srio. de Hacienda*, 93 D.P.R. 522 (1966); en *School of Commerce* v. *Tribl. Contribuciones*, 77 D.P.R. 875 (1955); y en *Cámara de Comercio* v. *Tribl. de Contribuciones*, 67 D.P.R. 427 (1947), porque la propiedad en estos casos se usaba para fines comerciales. Sostuvimos la exención en *Club Yaucano*

mir de contribución bajo la ley de compensación por desempleo a una organización religiosa en cuanto a conductores de camiones de una panadería operada como parte del sistema vocacional de una escuela que la organización operaba en la cual unos 150 niños recibían educación religiosa, intelectual y vocacional. La panadería empleaba estudiantes como parte de su entrenamiento vocacional. La producción en parte se consumía en la escuela y en una cafetería de la organización y en parte se distribuía al detal en distintas rutas para lo cual se utilizaban los camiones conducidos por los conductores en cuestión. Dijo el tribunal que no aplicaba la norma de interpretación liberal establecida en cuanto a exenciones de la ley de contribución sobre ingresos porque la intención y propósito del gobierno al adoptar la ley de compensación por desempleo no es el de recaudar rentas para el fondo general del gobierno sino el de obtener dinero para eliminar el desempleo; que esta ley debe interpretarse liberalmente de manera que se puedan lograr sus propósitos humanitarios. Véanse *Byrd* v. *Employment Security Agency*, 388 P.2d 100 (Idaho 1964); *Smith* v. *Reynolds*, 43 F.Supp. 510 (D.C. Minn. 1942).

En *Better Business Bureau* v. *U.S.*, 326 U.S. 279, 283 (1945), el tribunal determinó que las actividades del patrono "estaban mayormente encauzadas hacia un propósito comercial" y por lo tanto concluyó que cuando una asociación creada para fines no pecuniarios lleva a cabo un solo fin de naturaleza sustancial distinto de los enumerados en

---

v. *Srio. Hacienda*, 83 D.P.R. 623, 629–630, 631, 633 (1961), porque la propiedad era utilizada por una sociedad para fines no pecuniarios, para fines de solaz y esparcimiento de sus asociados. En *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 66 D.P.R. 659 (1946), negamos la exención a una asociación hospitalaria porque "ha funcionado cooperativamente con el objeto primordial de proporcionar ventajas y beneficios a sus propios socios de cuota más bien que a los comparativamente pocos. . . que reciben tratamiento gratis."

la exención de la contribución provista por la Ley de Seguro Social, el patrono pierde la exención no importa el número o la importancia de los propósitos enumerados en la exención que lleve a cabo. En *Institute for Trend Research* v. *Brown*, 124 A.2d 195, 198 (N.H. 1956), se denegó la exención del pago de la contribución bajo la ley de compensación por desempleo, porque "Todas las actividades [del patrono] . . . iban dirigidas fundamentalmente a realizar una investigación privada para industrias científicas en lugar de una investigación básica la cual estuviere disponible para el público en general."

### Discusión y Dictamen

El problema en este caso se reduce, por lo tanto, a analizar la creación de la recurrida, su administración y actividades, y determinar si fue creada y administrada exclusivamente para los fines exentos.

No hay duda que la recurrida fue creada para fines caritativos. Aunque sus artículos disponen que tendrá socios, de hecho sólo tiene los que componen su junta de directores y ninguno de ellos se beneficia en forma alguna, o recibe participación alguna de los ingresos de la recurrida. También es evidente que tanto el orfelinato como la escuela de enfermeras y el entrenamiento de médicos son actividades educativas y caritativas. Por lo tanto, no tenemos duda que en cuanto a estas actividades la recurrida está exenta del pago de la contribución bajo la Ley de Seguro de Desempleo, siempre y cuando sean administradas separada e independientemente de la actividad hospitalaria.

Nos resta por considerar la actividad hospitalaria de la recurrida. Ésta no lleva a cabo dicha actividad con el fin de prestar servicios hospitalarios a sus socios como en

*Buscaglia, Tes.* v. *Tribl. de Contribuciones,* supra.(⁴) El hecho que derive ingresos de esa operación, de por sí, no afecta la naturaleza caritativa de la actividad. Así se resolvió en *Intercity Hospital Ass'n* v. *Squire,* 56 F.Supp. 472 (D.C. Washington, S.D. 1944). En *Intercity Hospital Ass'n,* supra, sin embargo, el tribunal tomó en consideración al sostener la exención, dos circunstancias que no se establecieron en el caso ante nos, a saber (1) que las facilidades del patrono constituían más del 50% de las facilidades hospitalarias en una región en que vivían unas 50,000 personas dedicadas a la extracción de madera de los bosques y a otras actividades relacionadas con aquélla; y (2) que la prueba demostró que las facilidades hospitalarias del patrono podían continuarse en beneficio de tales personas sólo si se les relevaba de las cargas contributivas. Es indudable que el tribunal concluyó, bajo estas circunstancias especiales, que el beneficio de la contribución de seguro social del patrono fue contrapesado por el beneficio al bienestar general que rendían los servicios hospitalarios provistos por el patrono. Esta norma fue luego aplicada en *C. F. Mueller,* supra, a fin de sostener la exención de la ley de contribución sobre ingresos de una corporación organizada para beneficiar la escuela de derecho de la Universidad de Nueva York, no obstante que la institución continuó operando un negocio de manufactura de productos alimenticios que adquirió al fusionar con ella la corporación privada que lo poseía y administraba.

■ Los hechos del caso ante nos demuestran que el hospital de la recurrida sólo rendía una cantidad muy exigua de servicios caritativos. La recurrida en realidad lo operaba

---

(⁴) Y en los casos de *United States* v. *La Societe Française De Bien, Mut.,* 152 F.2d 243 (9th Cir. 1945); *Hasset* v. *Associated Hospital Service Corporation,* supra; y *La Societe Française, Etc.* v. *California Employ. Co.,* supra.

como una actividad comercial, pues a los fines de allegar pacientes, en adición al crecido número de pacientes pudientes que atraía, gestionó contratos con distintas organizaciones hospitalarias con el fin de proveer sus servicios médicos a socios de éstas, como en el caso de la Cruz Azul y la Triple SSS, o a empleados de una empresa privada como es el caso de la empresa azucarera Central Mercedita, o a personas con derecho a recibirlos a través de entidades gubernamentales como lo son la Administración de Veteranos, el Fondo del Seguro del Estado, la Rehabilitación Vocacional y el Servicio Federal de Salud Pública. En el caso de esta última agencia, el contrato en cuestión se obtenía mediante subasta pública. Es de general conocimiento que los contratos en cuestión son solicitados y gestionados por muchos hospitales privados, de lo que se puede inferir que la recurrida los obtenía en libre competencia con los demás hospitales porque ofrecía servicios adecuados a los precios más bajos.

El hecho de que en la práctica sufriese la recurrida pérdidas en estos contratos no quiere decir que estuviese proveyendo un servicio caritativo, por el montante de las pérdidas, a los pacientes tratados bajo tales contratos, sino más bien que la recurrida erró al calcular su cotización por los mismos o que administró su hospital con mayores gastos de lo que esperaba.

No existen en este caso circunstancias tales como en *Intercity Hospital Ass'n*, supra, que nos induzcan a sostener la exención reclamada. Por el contrario, es de conocimiento que en la zona de Ponce operan varias facilidades hospitalarias y la prueba demuestra que el pagar las contribuciones en cuestión no habrá de impedir que la recurrida continúe rindiendo a la comunidad la excelente obra que durante tantos años y con tanta dedicación ha venido rindiendo. Por el contrario, hará posible que sus empleados gocen de los bene-

ficios de la Ley de Seguridad de Empleo, cumplimentándose así el propósito legislativo expuesto en la misma.(⁵)

Se apunta por la recurrida, que la Ley Núm. 41 de 29 de marzo de 1964, eximió de toda clase de contribuciones e impuestos no tan sólo a la recurrida sino también a los terrenos, edificios, garages, anexos, residencias para médicos y enfermeras, existentes o que en el futuro se construyesen, incluyendo toda la propiedad mueble usada en su hospital. Arguye que esta determinación legislativa, unida al hecho que previamente había sido declarada exenta del pago de la contribución territorial, así como de arbitrios, es un reconocimiento por parte del Gobierno de Puerto Rico, de que "la recurrida es una entidad sin fines pecuniarios cuyas utilidades netas no redundan en beneficio de persona particular alguna, así como del uso primordialmente caritativo que la recurrida ha venido dando a los bienes utilizados por su hospital."

Es cierto que cualquier duda que pudiere haber en cuanto a tales exenciones se aclaró definitivamente por la referida Ley Núm. 41. Mas el hecho que las anteriores exenciones contributivas de la recurrida fueran incluidas en y en efecto reconfirmadas por, la referida Ley Núm. 41, no puede tener el alcance que pretende la recurrida de servir de base interpretativa para concluir que ella cualificaba durante los años en controversia para exención bajo la Ley de Seguridad de Empleo. Como la Ley Núm. 41 expresamente dispone que tiene efecto prospectivo no procede que determinemos su alcance aquí y más específicamente si cubre la contribución del patrono bajo la Ley de Seguridad de Empleo.

Lo cierto es que la prueba ha demostrado, a los efectos de la exención bajo esta ley, que durante los años a que se

---

(⁵) De acuerdo con las disposiciones de dicha ley, de estar exento el patrono del pago de la contribución provista por la misma, sus empleados quedan privados de los beneficios de dicha ley. (29 L.P.R.A. secs. 702(n) y (o), 703(c), y 707(f)).

refiere la reclamación en este caso (1959–1962), por razón de los contratos de servicios hospitalarios que la recurrida negoció con distintas entidades y lo exiguo de sus servicios a pacientes indigentes, la recurrida no era administrada, en cuanto a su hospital se refiere, predominantemente para fines caritativos.

■ La contribución que bajo la ley en cuestión debe pagar todo patrono, es de naturaleza especial y distinta de las contribuciones que corrientemente se imponen, cobran e ingresan al fondo general del gobierno para atender los servicios que éste presta a la comunidad, en los siguientes aspectos: (29 L.P.R.A. sec. 702(g) y (m); secs. 703 y 704.) (1) la propia Ley de Seguridad de Empleo define esta contribución como "las aportaciones de dinero que . . . se hagan al fondo por un patrono por tener personas rindiendo servicios para él"; (2) dicho fondo es el fondo de desempleo que se nutre de las aportaciones de los patronos, a razón de un por ciento de sus nóminas, del cual se pagan beneficios por razón de desempleo a los trabajadores asegurados.

Nos queda por considerar el planteamiento basado en una carta suscrita por el director de la Oficina de Operaciones Internacionales del Servicio de Rentas Internas Federal, de 27 de mayo de 1965, que se denomina como una "carta determinante" en la cual se informa que en opinión de dicho director, "basado en la evidencia presentada, la recurrida está exenta de la contribución de ingresos de Estados Unidos bajo la sec. 501(c)(3) del Código de Rentas Internas Federal, por estar organizada y ser administrada exclusivamente para fines educacionales, caritativos y científicos." Añade dicha carta que la recurrida no es responsable por el pago de contribuciones de seguro social federal ni del pago de las contribuciones impuestas bajo la Ley Federal de Desempleo. Unió la recurrida dicha carta a su alegato ante nos no con el fin de que se admita como evidencia sino

que sostiene que "habiéndose discutido la exención federal en el alegato de la recurrente, es justo que ese Hon. Tribunal considere la carta de determinación oficial del Departamento de Hacienda de los Estados Unidos para refutar los planteamientos en el alegato del recurrente." En su alegato, el recurrente hizo referencia a una carta de 29 de junio de 1964, suscrita por el jefe de la Sección de Organizaciones Exentas del Servicio de Rentas Internas, dirigida al National Catholic Welfare Conference, informándole que las instituciones que aparecen en el Directorio Oficial Católico de 1945, (en el cual aparece el nombre de la recurrida), tienen derecho a exención bajo las disposiciones de la Sec. 501(c)(3) del Código de 1954 y no son responsables por el pago de la contribución provista por la Ley Federal de Desempleo. Comentó el recurrente que no obstante haber denegado el juez de instancia la admisión de dicha carta en evidencia porque es una interpretación que "la puede hacer la Corte examinando la Ley federal y la Ley de Puerto Rico", la recurrida la acompañó a su escrito oponiéndose a la petición de revisión en este caso. Se trata, pues, de un documento que se trae a nuestra atención en relación con prueba ofrecida y no admitida por el tribunal de instancia, determinación que no fue objetada oportunamente por la recurrida.

En vista de la anterior situación, no es necesario que le demos consideración alguna a la "carta determinante" en cuestión. De todos modos, no consta en el récord del caso la prueba en que se basó. Tampoco tenemos ante nos constancia alguna sobre si las circunstancias relacionadas con la administración del hospital de la recurrida que dieron lugar a esa determinación eran las mismas que prevalecían durante los años en controversia, según aparecen de la prueba en este caso.

De los informes financieros de la recurrida y de otra prueba en el récord aparece que (1) los gastos del orfelinato para niños administrados por la recurrida a través de una

división de la misma titulada Institución Ferrán, son contabilizados separada e independientemente de los de las otras actividades de la recurrida; (2) entre tales gastos se incluyen los sueldos del personal de dicha Institución; (3) no se ha contabilizado, como pagada, contribución alguna bajo la Ley de Seguridad de Empleo sobre las nóminas de dicha actividad; (4) el orfelinato para niños se opera en facilidades físicas separadas e independientes de las demás actividades de la recurrida; y (5) los ingresos y gastos de las demás actividades de la recurrida aparecen contabilizados en conjunto e incluyen el pago de la contribución en cuestión cuyo rembolso se reclama en este caso, indudablemente porque tanto la escuela de enfermeras como el entrenamiento de médicos son actividades que por su naturaleza se llevan a cabo en forma integrada con la del hospital.

■ Es aparente de lo expuesto, que las actividades escolares y caritativas de la Institución Ferrán se llevaron a cabo separada e independientemente de las otras y, por lo tanto, la recurrida debe considerarse exenta del pago de contribución bajo la Ley de Seguridad de Empleo en relación con las nóminas de dicha Institución durante el período cubierto por la reclamación en este caso.

Por el contrario, como la escuela de enfermeras y la actividad de entrenamiento de médicos se llevaron a cabo en forma integrada y conjuntamente con la actividad hospitalaria y la recurrida no era elegible a la exención del pago de la contribución en cuestión con respecto a esta actividad, tampoco podía serlo con respecto a aquellas dos.

El récord demuestra que la recurrida pagó las contribuciones cuyo rembolso reclama sobre la base de las nóminas de estas últimas actividades.

En vista de lo expuesto, es innecesario considerar los demás apuntamientos del recurrente. *En tal virtud, se revocará la sentencia dictada por el Tribunal Superior, Sala de*

*Ponce, y en su lugar se dictará sentencia desestimando la demanda en este caso.*