RYDER MEMORIAL HOSPITAL, INC., demandante y recurrido, *v.* SECRETARIO DEL TRABAJO Y RECURSOS HUMANOS, demandado y peticionario.

*Número:* O-84-58      *Resuelto:* 28 de junio de 1985

*Miguel Rodríguez Villanueva,* abogado del peticionario; *Francisco A. Colón Cruz,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

I

Las disposiciones de la Ley de Seguridad de Empleo originalmente no cobijan a aquellos empleados que trabajaban para entidades con fines no pecuniarios. En su consecuencia, no aportando dichas entidades dinero alguno al fondo por desempleo, los trabajadores que laboraban en las mismas no tenían derecho a recibir del Gobierno los beneficios por desempleo al ser cesanteados. (¹)

En el año de 1971, el legislador cambió totalmente dicha situación. Mediante la Ley Núm. 85 de 24 de junio de 1971 (29 L.P.R.A. sec. 702 (k) (1) (F) ), se dispuso que el término "empleo" significa, o incluye:

El servicio realizado después del 31 de diciembre de 1971 por una persona como empleado de una corporación, institución, sociedad, asociación, fundación, o cualquier fondo comunal creadas y administradas exclusivamente para fines

---

(¹)Ley Núm. 7 de 21 de junio de 1956. La referida ley, en su Sec. 2 (29 L.P.R.A. sec. 702(k)(6)(S)) entonces establecía que sus disposiciones *no* eran aplicables al "servicio prestado como empleado de una corporación, institución, sociedad, asociación, fundación o cualquier fondo comunal o cualquiera otra organización descrita en la Sección 501(c)(3) del Código de Rentas Internas de Estados Unidos *creados* y *administrados exclusivamente* para fines religiosos, caritativos, científicos, literarios o educativos o para la prevención de la crueldad con los niños o con los animales, *ninguna parte de cuyas utilidades netas redunde en beneficio de algún accionista o individuo particular;* siempre que dicha organización esté exenta de contribución sobre ingresos bajo la Sección 501(a) del Código de Rentas Internas . . .". (Énfasis suplido.) Esto es, si se determinaba que una entidad cumplía con los requisitos establecidos por la transcrita disposición legal, la misma estaba *totalmente exenta* del pago de la contribución por desempleo.

religiosos, caritativos, científicos, literarios o educativos, o para la prevención de la crueldad con los niños o con los animales, ninguna parte de cuyas utilidades netas redunde en beneficio de algún accionista o individuo particular, o cualquiera otra organización descrita en la Sección 501(c)(3) del Código de Rentas Internas de Estados Unidos siempre que dicha organización esté exenta de contribución sobre ingresos bajo la Sección 501(a) del Código de Rentas Internas de Estados Unidos.

Dicho de otra forma, a partir de la vigencia de la citada Ley Núm. 85 los empleados de dichas entidades con fines no pecuniarios *sí* están cubiertos por el seguro por desempleo que establece la ley. Para absorber el impacto económico que sobre el Estado causaría este nuevo enfoque, se dispuso que las entidades contempladas por la citada Sec. 702(k)(1)(F) aportarían al fondo por desempleo que crea la ley en proporción a los beneficios que efectivamente le fuesen pagados por el Estado a los trabajadores de dichas entidades que una vez despedidos de sus empleos se acogen a los beneficios que provee la ley. A esos efectos se dispuso, que al finalizar cada trimestre natural, o cualquier otro período que el Secretario del Departamento del Trabajo determine, éste le facturará a cada organización "una suma igual al total de los beneficios regulares y adicionales más la mitad de la cantidad de beneficios extendidos atribuible a servicios prestados a dicha organización que hayan sido pagados durante dicho trimestre u otro período . . .". Véase 29 L.P.R.A. sec. 708(e)(1)(A).

En otras palabras, a partir de la vigencia de la citada Ley Núm. 85 las entidades con fines no pecuniarios, en lugar de contribuir al fondo de desempleo mediante el pago de un por ciento fijo sobre el total de su nómina salarial, contribuyen al referido fondo en proporción a los beneficios que efectivamente el Gobierno haya pagado a los empleados que ellos han cesanteado mediante un procedimiento, que podríamos llamar, de reembolso.

## II

En el año de 1967, en el hasta ahora normativo caso de *Srio. del Trabajo* v. *Asoc. de Señoras Damas*, 94 D.P.R. 137 (1967), este Tribunal tuvo la oportunidad de interpretar y establecer las circunstancias bajo las cuales una entidad estaba o no *totalmente exenta* del pago de contribuciones al amparo de las disposiciones pertinentes, *y entonces vigentes*, de la Ley de Seguridad de Empleo de Puerto Rico. En el citado caso se trataba de un hospital cuyos fines, según su certificado de incorporación, eran "la asistencia hospitalaria de enfermos pobres gratuitamente y también la de enfermos pudientes"; así como "el sostenimiento de un asilo u hogar para niños huérfanos, una escuela de enfermeras y cualquier otra obra benéfica que la Asociación crea conveniente establecer"; en que "sus únicos socios son las personas que constituyen su junta de directores ninguno de los cuales, así como ningún otro individuo en particular, recibe beneficio alguno de ella"; en que durante los años en controversia fueron atendidos en sus facilidades "pacientes referidos por empresas privadas, asociaciones hospitalarias o agencias gubernamentales" tales como La Cruz Azul, Triple SSS, Administración de Veteranos, Fondo del Seguro del Estado, etc., y la cual institución hospitalaria, mediante ley al efecto aprobada por la Asamblea Legislativa de Puerto Rico, había sido eximida del pago de "toda clase de contribuciones e impuestos a condición de que establezca y mantenga en su hospital un departamento o sala para prestar servicios de dispensario y hospitalización a personas indigentes". [2]

Haciendo énfasis en que la norma a seguirse en la interpretación de la Ley de Seguridad de Empleo de Puerto Rico, en virtud de sus propios términos, es a los efectos de que la misma "será liberalmente interpretada para cumplir su pro-

---

[2] Ley Núm. 41 de 29 de mayo de 1964 (13 L.P.R.A. sec. 199).

pósito de promover la seguridad de empleos . . . y proveer para el pago de compensación a personas desempleadas por medio de la acumulación de reservas", establecimos en el citado caso de *Srio. del Trabajo* v. *Asoc. de Señoras Damas,* supra, en síntesis, que la "contribución que bajo la ley en cuestión debe pagar todo patrono, es de naturaleza especial y distinta de las contribuciones que corrientemente se imponen, cobran e ingresan al fondo general del gobierno para atender los servicios que éste presta a la comunidad"; que para que una entidad en particular estuviere exenta de la contribución en controversia venía obligada a cumplir con tres requisitos, a saber: "(1) que esté *creada exclusivamente* para uno de los fines exentos; (2) que esté *administrada exclusivamente* para uno de los fines exentos; y (3) que ninguna de sus utilidades netas redunde en beneficio de algún accionista o persona particular" (énfasis suplido); que "el término 'exclusivamente' usado en la disposición en cuestión significa 'primordialmente', 'principalmente', 'en gran medida' ", y que la "exención bajo este tipo de legislación debe interpretarse estrictamente . . .".

Destacando el hecho de que en relación con sus actividades hospitalarias los autos demostraban que comparativamente el hospital "sólo rendía una cantidad muy exigua de servicios caritativos . . ." ([3]) y que dicho hospital en realidad se "operaba como una actividad comercial, pues a los fines de allegar pacientes, en adición al crecido número de pacientes pudientes que atraía, gestionó contratos con distintas organizaciones hospitalarias con el fin de proveer sus servicios médicos a socios de éstas, como en el caso de la Cruz Azul y la Triple SSS, . . ., o a personas con derecho a recibirlos a través de entidades gubernamentales como lo son la Administración de Veteranos, el Fondo del Seguro del Estado, . . .", y ante la alternativa inexorable de tener que negarle a los empleados afectados los beneficios de la Ley de Seguridad de Empleo de Puerto

---

([3]) Referente a aquellos que eran *completamente* gratuitos.

Rico, resolvimos que el Hospital Santo Asilo de Damas no estaba exento del pago de contribuciones bajo la referida ley en relación con sus actividades hospitalarias por cuanto las mismas no eran administradas exclusivamente con fines caritativos. No obstante ello, y con el obvio propósito de atemperar el rigor de la norma establecida y hacer cumplida justicia, reconocimos que dicha institución estaba exenta del pago de las contribuciones en cuestión en relación con la operación del orfanato, la escuela de enfermeras, y el entrenamiento de médicos por cuanto dichas actividades evidentemente eran de índole "educativas y caritativas", siempre y cuando las mismas fueran administradas, y contabilizadas, separada e independientemente de la actividad hospitalaria.

## III

En el presente caso nos enfrentamos a unos hechos muy similares a los del citado caso de *Srio. del Trabajo* v. *Asoc. de Señoras Damas*. El Hospital Ryder Memorial se fundó originalmente en la ciudad de Humacao en el año de 1914 como una corporación con fines *no* pecuniarios de la American Missionary Association, auspiciado el mismo en Puerto Rico por la Iglesia Evangélica Unida. Mediante la Ley Núm. 99 de 26 de junio de 1965, en "vista de los buenos servicios que presta el Hospital Ryder a la comunidad puertorriqueña, y en especial a la zona Este de la Isla, . . ." (⁴) se eximió a la referida institución hospitalaria del ". . . pago de toda clase de contribuciones e impuestos sobre terrenos, edificios y otras propiedades . . .". (⁵) El 1ro de diciembre de 1967 se organizó, como

---

(⁴) En la exposición de motivos de la citada Ley Núm. 99 se hizo incapié en que el "Hospital Ryder ha mantenido y mantiene servicios de dispensario y hospitalización a personas indigentes los cuales se propone aumentar en proporción al desarrollo y fortalecimiento de su situación financiera . . .".

(⁵) Como condición de la exención se le exigió al Ryder que "mantenga en dicho hospital un departamento para prestar servicios gratuitos de dispensario y hospitalización a personas indigentes". Se facultó al Secretario

corporación sucesora, bajo las Leyes del Estado Libre Asociado de Puerto Rico el Ryder Memorial Hospital, Inc., con el propósito de establecer, mantener y operar un hospital para el cuido de personas que requieren atención médico-hospitalaria a costos razonables; sus fines principales son científicos, educacionales y de investigación. Ningún socio, persona particular o jurídica recibe beneficio alguno de las utilidades del Ryder Memorial Hospital, Inc. Los servicios prestados por su junta de directores son gratuitos. Los beneficios obtenidos de las operaciones del hospital son utilizados para mejoras de la planta física, adquisición de equipo y para ampliar y subvencionar los servicios prestados por la institución.

La citada institución hospitalaria ofrece, en síntesis y en lo pertinente, servicios de hospitalización y médico-quirúrgicos, opera clínicas externas, administra una escuela de enfermería, mantiene un programa de cuidado en el hogar (*home care*), y opera una oficina de trabajo social. Atiende en sus facilidades a pacientes privados, a pacientes que tienen diversos planes médicos (ACCA, Medicare, Cruz Azul de Puerto Rico, Asociación de Maestros, Fondo del Seguro del Estado, etc.) y a pacientes indigentes. Sus ingresos provienen de los servicios prestados a los pacientes pudientes y de los distintos planes médicos y una pequeña proporción de donaciones y asistencia gubernamental. Su condición de institución con fines no pecuniarios ha sido reconocida, al amparo de la Sec. 501 (a) del Código de Rentas Internas de Estados Unidos, por el Servicio de Rentas Internas Federal y, para fines contributivos localmente, por el Secretario de Hacienda de Puerto Rico.

El Secretario del Trabajo de Puerto Rico, no obstante aceptar la corrección de los hechos antes expuestos, denegó la solicitud que le hiciera el Hospital Ryder a los efectos de poder acogerse al "método de reembolso" que provee la citada

de Hacienda de Puerto Rico para cancelar la exención concedida si no se cumpliese con lo antes señalado. Dicha exención continúa en vigor al día de hoy.

y vigente Sec. 708 (e) (1) (A) del Título 29 de L.P.R.A. Resolvió que, en vista de que la institución sólo presta un por ciento limitado de servicios enteramente gratuitos y en vista de lo resuelto por este Tribunal en el citado caso de *Srio. del Trabajo* v. *Asoc. de Señoras Damas*, supra, la misma no cualificaba como organización sin fines pecuniarios bajo la citada Sec. 702 (k) (1) (F) del referido Título 29 por cuanto no era una institución "administrada *exclusivamente* para fines científicos o educativos ...". (Énfasis suplido.)

Inconforme, el Ryder Memorial Hospital acudió en revisión ante el Tribunal Superior de Puerto Rico, Sala de Humacao. Expresando que la interpretación que de las enmiendas acaecidas en el año 1971 hiciera el Secretario del Trabajo era una "muy estrecha" por cuanto en virtud de las mismas era clara la intención legislativa de concederle alivio contributivo a las instituciones con fines no pecuniarios permitiéndoles acogerse al "método de reembolso", dicho foro [6] revocó la decisión administrativa emitida. Expedimos auto de *certiorari* a solicitud del Secretario del Trabajo. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

## IV

Somos del criterio que las enmiendas que sufriera la Ley de Seguridad de Empleo en el año de 1971 ameritan que se modifique lo resuelto en el citado caso de *Srio. del Trabajo* v. *Asoc. de Señoras Damas*, supra. Un análisis cuidadoso de la mencionada decisión revela que la "razón de ser" del resultado al que se llega en el mismo fue el evitar que los numerosos empleados que se desempeñaban en la fase hospitalaria de la institución en controversia perdieran o quedaran excluidos de los beneficios que provee la referida ley. Ante la alternativa de que los mismos quedaran al descubierto, optamos por enfatizar la intención legislativa o propósito *general* que anima

---

[6] Hon. Ángel D. Ramírez Ramírez, Juez.

la citada ley de proteger a los trabajadores y por restringir la exención que el Legislador le había concedido en la misma ley a las instituciones sin fines pecuniarios.

■ Las enmiendas que la referida ley sufriera en el año 1971 permiten que hoy en día se logren *ambos* propósitos legislativos. Bajo el nuevo enfoque, el trabajador *nunca* resulta perjudicado. Independientemente del hecho de que éste trabaje para una entidad con o sin fines pecuniarios, *siempre* tendrá derecho a los beneficios por desempleo que provee la ley. Distinta es la situación en cuanto a las entidades propiamente. De la decisión que se haga sobre si cumplen o no con los requisitos establecidos en la citada Sec. 701 (k) (1) (F) dependerá si tienen o no el derecho al alivio contributivo de no tener que pagar un por ciento fijo sobre el monto total de su nómina salarial por concepto de la contribución por desempleo o, por el contrario, pagar solamente en proporción a los beneficios recibidos por los empleados que han cesanteado durante el período cubierto.

Dicho alivio contributivo es uno no sólo importante para esas instituciones desde un punto de vista económico sino que es uno sumamente merecido. Como sabemos, le corresponde al Estado en primera instancia la responsabilidad principal de velar por el bienestar de nuestro pueblo; parte integrante e importantísima de ese "bienestar" lo es el cuidado de la salud. Entidades privadas con fines no pecuniarios —tales como el Hospital Ryder Memorial, Inc.— ayudan al Estado a sobrellevar tan pesada carga y responsabilidad. Precisamente debido a ello es que el Estado, por medio de diferentes leyes, le ha concedido diversos alivios contributivos a estas entidades. Estas exenciones constituyen en realidad una especie de "subsidio" que concede el Estado a cambio de la labor social que realizan estas entidades. [7]

---

[7] Lo expresado justifica que en relación con esta clase de situaciones no apliquemos la norma jurisprudencial a los efectos de que los estatutos

En lo referente a instituciones hospitalarias, dichos subsidios y las donaciones que éstas reciben del público en general no son usualmente suficientes para que las mismas puedan operar al nivel de excelencia que todo el mundo, inclusive este Tribunal, les exige. Resulta prácticamente imperativo, en su consecuencia, que a dichas instituciones se les permita —sin que necesariamente pierdan su condición de instituciones con fines no pecuniarios— poder atender en sus facilidades tanto a pacientes privados pudientes como a pacientes que acuden a las mismas por razón de estar acogidos a un plan médico, sobre todo cuando consideramos que la retribución que recibe el hospital de estos planes es una sumamente razonable y que en la mayor parte de los casos el ingreso que se obtiene de los mismos apenas cubre el costo de los servicios prestados. (8)

■ Resolvemos, en su consecuencia, que una institución hospitalaria como la aquí recurrida Ryder Memorial Hospital, Inc., que en principio cumple con todos los requisitos que exige la citada Sec. 702 (k) (1) (F) de la Ley de Seguridad de Empleo, no pierde su condición como institución sin fines pecuniarios bajo la citada disposición legal por el mero hecho de que acepte en sus facilidades a pacientes privados pudientes y a pacientes con planes médicos. (9)

---

contributivos que conceden exenciones deben ser interpretados restrictivamente por constituir dichas exenciones "gracias del legislador o del soberano". *Berwind Lines, Inc.* v. *Srio. de Hacienda*, 113 D.P.R. 658, 660 (1982).

(8) Resulta pertinente señalar que los servicios que una institución hospitalaria le brinda a pacientes de seguros médicos gubernamentales de salud son considerados como "caridad parcial". Rev. Rul. 69-545, 1969-2 I. R. B. 117; Rev. Rul. 74-595, 1974-2 I. R. B. 164; R. S. Bromberg, *The Charitable Hospital*, 20 Cath. U.L. Rev. 237, 351 (1970). En relación con aquellos planes médicos privados, algunos tribunales han considerado los fondos que por ellos recibe la institución hospitalaria como "donaciones". *Goldwater* v. *Citizens Casualty Co. of New York*, 7 N.Y.S.2d 242, 247 (1938).

(9) Cualquier pronunciamiento en el caso de *Srio. del Trabajo* v. *Asoc. de Señoras Damas*, 94 D.P.R. 137 (1967), que resulte incompatible con lo aquí resuelto queda expresamente revocado.

Por los fundamentos arriba expresados, *se dictará senten-cia que confirme la dictada por el Tribunal Superior de Puerto Rico, Sala de Humacao, en el presente caso.* (¹⁰)

El Juez Asociado Señor Ortiz concurre en el resultado con opinión.

— o —

Voto concurrente del Juez Asociado Señor Ortiz.

Por tener serias dudas sobre si la Ley Núm. 99 de 26 de junio de 1965 que eximió a la institución recurrida del "pago de toda clase de contribución e impuestos sobre terrenos, edificios y otras propiedades" es una que concede una gracia, privilegio o, por el contrario, un subsidio a cambio de la labor social que realiza esta entidad, consideramos innecesario pronunciarnos sobre la aplicabilidad de la norma de interpretación restrictiva de esta clase de estatutos. Por no haber el Secretario de Hacienda hecho gestión alguna para cancelar la exención, a tenor con la facultad que le otorga la Ley Núm. 99, concurrimos con la decisión de extenderle a la recurrida los beneficios de la Ley Núm. 85 de 24 de junio de 1971 (29 L.P.R.A. sec. 702(k)(1)(F)). Debemos guardarle deferencia a la política pública que dio lugar a la aprobación de las Leyes Núms. 85 y 99, antes citadas. (¹)

---

(¹⁰) Nos llama la atención el hecho de que no exista en el Departamento del Trabajo y Recursos Humanos un reglamento que recoja los criterios o guías para evaluar cuándo una entidad en particular cualifica o no como una sin fines pecuniarios bajo la citada Sec. 702(k)(1)(F) de la Ley de Seguridad de Empleo a los fines de acogerse al método de reembolso provisto por la Sec. 708 de la referida ley.

(¹) Concurrimos con el enfoque de que la Ley Núm. 85 tuvo el efecto de modificar las normas enunciadas en *Srio. del Trabajo* v. *Asoc. de Señoras Damas,* 94 D.P.R. 137 (1967).